633 P.2d 325

**GLADDEN FARMS, INC., an Arizona corporation, and Saylor Farms, an Arizona corporation, Petitioners,**

v.

**STATE of Arizona; Hon. Bruce Babbitt, Governor of the State of Arizona; State Land Department of the State of Arizona; Joe T. Fallini, State Land Commissioner; Arizona Division of Emergency Services; Charles A. Ott, Jr., Director of Arizona Division of Emergency Services; Hon. Marilyn Riddel, Judge of the Superior Court of Maricopa County, Respondents.**

No. 15374.

Supreme Court of Arizona, In Banc.

June 15, 1981.

Rehearing Denied July 21, 1981.

James H. Green, Jr., Phoenix, for petitioners.

Robert K. Corbin, Atty. Gen. by Karen L. Schroeder, Asst. Atty. Gen., Phoenix, for respondents.

CAMERON, Justice.

This is a petition for special action filed by Gladden Farms and Saylor Farms, both Arizona corporations, to void the sale to the Arizona Division of Emergency Services of 105.18 acres of state trust land which had been previously leased to petitioners. We accepted this petition and the petitions in *City of Sierra Vista v. Babbitt,* 129 Ariz. 524, 633 P.2d 333 (1981), No. 15360, and *Arizona State Land Department v. Superior Court,* 129 Ariz. 521, 633 P.2d 330 (1981), No. 15320, both filed this day, pursuant to Art. 6, § 5 of the Arizona Constitution and Rule 1, Rules of Procedure for Special Actions, 17A A.R.S., because of the importance of the question regarding the sale of trust lands to state agencies without advertisement, auction and bid, and because there is no equal, plain, adequate or speedy remedy by appeal.

We must answer only one question and that is whether the sale of school trust lands without public auction to state agencies such as the Arizona Division of Emergency Services violates the New Mexico-Arizona Enabling Act of 1910.

The facts necessary for a determination of this matter are as follows. In March and December of 1978, Allenville, Arizona, a small all Black community located on the Gila River, 1½ miles south of Buckeye and 35 miles west of Phoenix, Arizona, was flooded by the overflow from the Gila River. The residents of Allenville were forced from their homes and were temporarily housed by the Division of Emergency Services.

The Division, after consultation with the United States Corps of Engineers, determined that it would be impractical to make the area safe from future flooding and that

relocation was the only economically justifiable alternative, either in other dwellings in the Buckeye Valley or metropolitan Phoenix, or by "constructing a replacement community outside the floodplain." Relocation in Buckeye or Phoenix was rejected because of a "lack of suitable and affordable housing" and because to do so "would have destroyed the unique community cohesion which has developed in Allenville." It was therefore decided to relocate the former inhabitants of Allenville. The Division of Emergency Services was to purchase the land and then convey and transfer the land in individual tracts to the former residents of Allenville.

The Division applied to the State Land Department to purchase 105.18 acres of trust land occupied by the petitioners, Gladden Farms and Saylor Farms, pursuant to a valid lease from the State Land Department. Even though this area was state trust land, the purchase by the Division was to be without public auction for the appraised value of the land as specifically allowed by A.R.S. § 37–132(A)(4). The application was on a form titled "Application to purchase the state land for public use without public auction by a governmental agency of the State or a political subdivision or municipal corporation thereof." A certificate of purchase for 75.54 acres was issued by the State Land Department which indicated that the land was appraised at approximately $1,464.00 per acre. Petitioners in their pleadings indicated that they were and are willing to bid more than the appraised value for the land in question should it be sold at public auction.

Petitioners unsuccessfully sought relief from the State Land Department and then appealed to the Superior Court. From an adverse ruling in the Superior Court, this petition for special action was filed which we accepted. In the meantime, the State has issued a patent to the Division for 75 of the 105 acres.

■■■ On 20 June 1910, the Congress of the United States passed the Enabling Act for the admission into the Union of New Mexico and Arizona. Sections 1–18 of the Enabling Act referred exclusively to New Mexico, while sections 19–35 referred exclusively to the State of Arizona. It provided that under 9,000,000 acres of federal land were to be given to the new State of Arizona in trust for the support of the common schools. The Enabling Act was accepted by the people of Arizona, Ariz. Const. art. 20, ¶ 12, and the terms of the Act cannot be altered, changed, amended or disregarded without an act of Congress. The Enabling Act is one of the fundamental laws of the State of Arizona and is superior to the Constitution of the State of Arizona, in that neither the Arizona Constitution nor laws enacted pursuant thereto may be in conflict. *Murphy v. State*, 65 Ariz. 338, 181 P.2d 336 (1947).

The practice of granting newly admitted states title to federal lands in trust for certain designated public purposes has been in existence since the Northwest Ordinance of 1787. The new states have not always treated the trust lands in the manner in which Congress intended, and certain abuses and fraud have occurred. Because of past abuses, Arizona and New Mexico, as the last of the 48 contiguous states to enter the Union, were provided with an Enabling Act somewhat stricter than those under which previous states had entered the Union.

Section 28 of the New Mexico-Arizona Enabling Act reads in part as follows:

"Said lands shall not be sold or leased, in whole or in part, except to the highest and best bidder at a public auction to be held at the county seat of the county wherein the lands to be affected, or the major portion thereof, shall lie, notice of which public auction shall first have been duly given by advertisement * * *."

Article 10 of the Arizona Constitution, entitled "State and School Lands," incorporates the Enabling Act with certain minor exceptions.

The limits of the Act were soon tested by the new states. New Mexico, in 1915, provided by statute that the Commissioner of Public Lands could use 3% of the annual income from the sale and lease of the trust

lands to give publicity to such resources in the hope of attracting buyers and settlers. While recognizing that a private proprietor of the lands might, in the wise administration of the property, advertise their advantages, the United States Supreme Court struck down the statute as being violative of the trust. *Ervien v. United States*, 251 U.S. 41, 40 S.Ct. 75, 64 L.Ed. 128 (1919).

In 1938, this court decided the case of *Grossetta v. Choate*, 51 Ariz. 248, 75 P.2d 1031, in which the question of an easement over state trust lands was considered. We followed the case of *Ross v. Trustees of University of Wyoming*, 30 Wyo. 433, 222 P. 3 (1924), opinion on rehearing 31 Wyo. 464, 228 P. 642 (1924), which held, in construing similar provisions of the Wyoming Enabling Act, that the power of a state to provide highways for public use is like the power of taxation and is essential to the existence of government. The Wyoming court allowed the appropriation of trust lands in Wyoming for highway purposes without compensation. We likewise held that the state could obtain a right of way over state trust land without complying with the restrictions contained in the Enabling Act. We were careful in Grossetta, supra, to distinguish the facts from a decision of the Montana Supreme Court which had rejected an attempt to condemn trust lands for dam and reservoir sites without public auction. *State v. District Court*, 42 Mont. 105, 112 P. 706 (1910). We stated:

"* * * In that case the fee of the land was sought, while here only an easement is asked. Our section 3005, *supra*, provides for the case where the fee is granted by requiring the sale to be in conformity with the law as to appraisement, notice of sale, etc. It is probable that, if the supervisors were asking for the fee, this is the only way to obtain it, but they are not asking the land department for the fee. * * * [S]ince there is nothing in the Enabling Act limiting the power of the legislature to grant rights of way easements over the public lands for public highways, it can have no application here." 51 Ariz. at 253–54, 75 P.2d at 1033.

Later, in *State v. State Land Department*, 62 Ariz. 248, 156 P.2d 901 (1945), we carried the reasoning of *Grossetta* and *Ross*, supra, further, holding that the state was not required to pay

"any purchase price, rental, royalty or other charge for the taking or use of school and institutional lands or the natural products thereof for the establishment, construction, maintenance or repair of state highways." 62 Ariz. at 256, 156 P.2d at 904.

Later, the New Mexico Supreme Court, in construing the same provision in their part of the Enabling Act, held that while trust lands could be sold to the New Mexico Highway Commission for rights of way or easements without advertisement and bid, a fair appraisal value must be paid. The New Mexico court stated:

"Notwithstanding our high regard for the Arizona Supreme Court and its decisions, we feel their cases are based on the strained reasoning and inferences condemned in the opinions in *United States v. Ervien*, supra." *State v. Walker*, 61 N.M. 374, 380, 301 P.2d 317, 321 (1956).

In construing similar provisions of the Enabling Act, Arizona and New Mexico differed only in that Arizona held that in the granting of easements or rights of way across state trust lands, the state need not pay compensation, while New Mexico held that adequate consideration must be paid. Both courts, however, held that easements or rights of way over trust lands could be granted without auction and bid. These cases did not consider sale of a fee without auction and bid.

The next case of this court was *Arizona Highway Department v. Lassen*, 99 Ariz. 161, 407 P.2d 747 (1965), which considered a new rule by the Commissioner of the State Land Department that required payment of the appraised vale by the Highway Department for rights of way or material sites on state trust lands. This court held that the land commissioner did not have the authority to adopt the rule as it applied to rights of way over trust lands. Again we emphasized that fee was not involved:

"The respective rights of way for these highways take less than a fee estate, and there is no disposition of the trust areas, and the trust and its beneficiaries are not deprived of anything of value. * * * " 99 Ariz., at 166, 407 P.2d at 750.

*Arizona Highway Department v. Lassen,* supra, was taken to the United States Supreme Court which held that the restrictions of the Act did not apply to "acquisitions by the State for its highway program," as long as the full appraised value was paid for the rights. of way. *Lassen v. Arizona,* 385 U.S. 458, 462, 87 S.Ct. 584, 586, 17 L.Ed.2d 515, 519 (1967). The United States Supreme Court, while rejecting the suggestion that the restriction in the Enabling Act did not apply because less than a fee interest was being obtained, see *Lassen v. Arizona,* supra, 385 U.S. at 462, 87 S.Ct. at 586, 17 L.Ed.2d at 519, n. 6, went on to say:

"* * * The trust will be protected, and its purposes entirely satisfied, if the State is required to provide full compensation for the land it uses. We hold, therefore, that Arizona need not offer public notice or conduct a public sale when it seeks trust lands for its highway program. * * * " 385 U.S. at 465, 87 S.Ct. at 588, 17 L.Ed.2d at 520.

After the United States Supreme Court case of *Lassen,* supra, A.R.S. § 37–132(A)(4) was enacted and reads in pertinent part as follows:

"* * * Sales to governmental agencies for cash without public auction shall be made for a specific purpose and on condition of reversion to the state of Arizona when the lands cease to be put to the purpose for which they shall have been sold. * * * " A.R.S. § 37–132 A (4).

It is the contention of the respondents that while the Enabling Act requires that trust lands shall not be sold except to the highest and best bidder at public auction, *Lassen* has carved out an exception to the rule, and that as to a state agency, trust lands may be acquired for public purposes without advertisement, auction and sale to the highest and best bidder. Respondents rely on the United States Supreme Court language in *Lassen,* supra, which states:

"* * * The restrictions were thus intended to guarantee, by preventing particular abuses through the prohibition of specific practices, that the trust received appropriate compensation for trust lands. We see no need to read the Act to impose these restrictions on transfers in which the abuses they were intended to prevent are not likely to occur, and in which the trust may in another and more effective fashion be assured full compensation." 385 U.S. at 464, 87 S.Ct. at 587, 17 L.Ed.2d at 520.

as authority that sale to a state agency is exempted from the auction and bid provisions of the Enabling Act because the abuses the Act was intended to prevent are not likely to occur in such a sale. We do not read the United States Supreme Court decision that broadly. The United States Supreme Court held that for highway purposes, the state could obtain an easement or right of way without auction and sale. That is as far as the court went and no further. No cases have been cited to us and we have found none which hold that, as to the transfer of an interest in fee, the requirement of advertisement, auction and sale to the "highest and best bidder" is waived when the sale is to a state agency.

As noted above, one of the purposes of the specific language in the Enabling Act was to assure that the trust lands generated the appropriate if not maximum revenue for the support of the common schools. The fact that the sale is to another state agency does not necessarily provide the protection to the trust lands that Congress intended. For example, an appraisal could be fairly made and the price received for public sale might still be higher than the appraised value. We note that Article X, section 4 of the Arizona Constitution requires. that "All lands * * * shall be appraised at their true value, and no sale * * shall be made for * * * less than the value so ascertained. * * * " This would indicate the hope, at least, that most sales at auction will bring more than the appraised

value. The experience of this writer is that indeed most sales of state land at auction are, in fact, for a price higher than the appraised value. In the instant case, petitioners, for example, allege that they are willing to pay a higher price for the land than the appraised value.

The Enabling Act is itself quite clear: "Said lands shall not be sold * * *, except to the highest and best bidder at the public auction * * *." The only exception to the plain clear language of this Act is in the granting of an easement or right of way and then only because no fee interest is involved, and because "there is nothing in the Enabling Act limiting the power of the legislature to grant right of way easements * * * for public highways." *Grossetta v. Choate*, supra, 51 Ariz. at 254, 75 P.2d at 1033.

However worthwhile and desirable this sale may be for the humanitarian purposes for which it is made, we do not believe that the sale without auction and bid assures the "highest and best" price that the Enabling Act requires. The Enabling Act does not allow trust lands to be used for the purpose of subsidizing public programs no matter how meritorious the programs.

Decision of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and GORDON, JJ., concur.