157 Ariz. 537 (1988)
760 P.2d 537
DEER VALLEY UNIFIED SCHOOL DISTRICT NO. 97 OF MARICOPA COUNTY, Petitioner,
v.
SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, Honorable Ruth Hilliard, a Judge Thereof, Respondent Judge, STATE of Arizona, ex rel., Robert K. LANE, Commissioner, State Land Department, Real Party in Interest.
No. CV-86-0577-T.
Supreme Court of Arizona.
June 30, 1988.
Reconsideration Denied September 20, 1988.
Heron, Burchette, Ruckert & Rothwell by Kenneth C. Sundlof, Jr., Douglas G. Zimmerman, Gary L. Lassen, Phoenix, for petitioner.
Robert K. Corbin, Atty. Gen. by Melinda L. Garrahan, Michael N. Harrison, Phoenix, for real party in interest.
Larry J. Richmond, Ltd. by Larry J. Richmond, Julie M. Lemmon, Phoenix, for amicus curiae Flood Control Dist. of Maricopa County.
Johnson & Shelley by J. LaMar Shelley, Robert M. Jarrett, Jr., Phoenix, for amicus curiae League of Arizona Cities and Towns.
Arizona School Boards Ass'n by Robert M. Jarrett, Jr., Phoenix, for amicus curiae Arizona School Boards Assn.
FELDMAN, Vice Chief Justice.
This case requires us to review the propriety of a school district's condemnation of state school trust land, a matter of first impression in our state. We transferred the appeal to this court to examine important questions concerning the disposition of our state school trust lands. Rule 19, Ariz.R.Civ.App.P., 17A A.R.S. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12-120.24.
FACTUAL AND PROCEDURAL SUMMARY
Plaintiff, Deer Valley Unified School District ("Deer Valley"), is located in northern Maricopa County. Due to a dramatic rise in elementary school student enrollments in the eastern portion of their district, Deer Valley officials investigated possible sites for a new school in that area. They finally located a suitable fifteen-acre parcel owned by the state school trust. Deer Valley contacted the Arizona State Land Department (the "Department") to see if the district could obtain the land. However, the Department preferred to hold the property in the hope of obtaining a higher yield for the state school trust through future commercial leases. The Department refused to hold a public auction and allow Deer Valley an opportunity to buy the property.
*538 When further negotiations proved fruitless, Deer Valley filed an action seeking to condemn the proposed school site. The action was brought under the eminent domain provisions of A.R.S. §§ 12-1111 et seq. In its complaint, Deer Valley also sought an interlocutory order allowing it to take immediate possession of the property upon the deposit of money or the posting of a bond. A.R.S. § 12-1116. The trial court issued an order requiring the Department to show cause why Deer Valley should not take immediate possession of the property. See A.R.S. § 12-1116. When the Department moved to dismiss the complaint, the trial court vacated the show cause hearing and granted the dismissal motion.
The trial court dismissed the complaint on the grounds that the proposed condemnation violated § 28 of the Arizona-New Mexico Enabling Act, Act of June 20, 1910, Pub.L. No. 219 (ch. 310), 36 Stat. 557 (the "Enabling Act") and its rescript in Ariz. Const. art. 10. Those provisions prohibit the sale of state school trust lands for less than the appraised true value to the highest and best bidder at a duly advertised public auction. The trial court concluded that these rules applied in full to acquisitions by eminent domain, effectively preventing the condemnation of school trust land. The court concluded also that condemnation would deprive the Department of the opportunity to obtain a price higher than the appraised value, hinder the Department's obligation to manage and maximize the trust benefits and give Deer Valley trust benefits to the detriment of other beneficiaries. Finally, the court ruled that the school trust land did not belong to the state and was therefore not subject to condemnation under A.R.S. § 12-1114. The court held, therefore, that neither the state nor its subdivisions could condemn land held in the school trust.
Deer Valley filed a timely notice of appeal and sought special action relief[1] in the court of appeals. The court of appeals stayed the appeal pending resolution of the special action. After briefing and oral argument, on July 23, 1986 the court of appeals declined to accept special action jurisdiction without comment as to the merits of the case. The appeal itself became at issue in the court of appeals on September 30, 1986. Deer Valley sought relief from this court either by review of the denial of special action jurisdiction or by transfer of the appeal. We denied special action review, but ordered transfer of the appeal to this court. Rule 19, Ariz.R.Civ.App.P., 17A A.R.S.
DISCUSSION
The central issue in this case is whether either the Enabling Act or the Arizona Constitution allows Deer Valley to condemn state school trust land.
A. The State School Trust Lands
As Arizona approached statehood in 1910, Congress proposed to transfer millions of acres of federal land directly to the new state for the support of its common schools. Enabling Act § 24. Congress had made similar grants to other states with untoward results. Some states improvidently leased and sold their lands with little or no benefit to the public schools. See Murphy v. State, 65 Ariz. 338, 351, 181 P.2d 336, 344 (1947). As a result, when Congress agreed to give the land to Arizona, it required Arizona to accept and hold the land in trust and prohibited the sale or other disposal of such trust land except under extremely restrictive and detailed conditions. See Kadish v. Arizona State Land Department, 155 Ariz. 484, 487, 747 P.2d 1183, 1186 (1987).
The members of Arizona's constitutional convention fully appreciated the value of the proposed school grant. The delegates therefore drafted an unambiguous clause accepting the gift and restrictions of the Enabling Act:
The State of Arizona and its people hereby consent to all and singular the provisions of the Enabling Act ... concerning *539 the lands thereby granted or confirmed to the State, the terms and conditions upon which said grants and confirmations are made, and the means and manner of enforcing such terms and conditions, all in every respect and particular as in the aforesaid Enabling Act provided.
Ariz. Const. art. 20, ¶ 12.
The framers of our constitution, however, went beyond mere acceptance of the terms and benefits of a federal statute. They independently replicated the essential restrictions of the Enabling Act in Article 10 of the Arizona Constitution. In a special direct election held February 8, 1911, the people of Arizona approved their convention's constitution by a vote of 12,187 to 3,822. Constitution Ratification, Phoenix Arizona Republican, Feb. 10, 1911, at 1, col. 3; Canvass of the Returns, Phoenix Arizona Republican, Feb. 28, 1911, at 1, col. 1, 2. When Arizona ultimately attained statehood on February 14, 1912, the constitutional conditions and limits on the management and disposal of the state school trust lands became part of Arizona's "fundamental law." Union Oil Co. of Arizona v. Norton-Morgan Commercial Co., 23 Ariz. 236, 241, 202 P. 1077, 1079 (1922).
Congress has periodically amended the Enabling Act to allow Arizona more flexible use of its school trust land. See, e.g., Act of June 5, 1936, Pub.L. No. 658 (ch. 517), 49 Stat. 1477; Act of June 2, 1951, Pub.L. No. 44 (ch. 120), 65 Stat. 50. These amendments were normally the result of specific requests for change channeled through Arizona's congressional delegation. See, e.g., S.Rep. No. 1939, 74th Cong., 2d Sess. (1936); H.R.Rep. No. 2615, 74th Cong., 2d Sess. (1936); S.Rep. No. 194, 82d Cong., 1st Sess. (1951); H.R.Rep. No. 429, 82d Cong., 1st Sess. (1951); 97 Cong. Rec. 3628-29, 5731-32 (1951) (floor debates).
In each case, the Arizona electorate voted to change the Arizona Constitution to take advantage of the prior revision in the federal statutory law. See, e.g., 1940 Ariz. Sess. Laws, Initiative and Referendum Measures, at 392-93 (amending Ariz. Const. art. 10, § 3); 1951 Ariz. Sess. Laws, Initiative and Referendum Measures, at 483-85 (same). See also Boice v. Campbell, 30 Ariz. 424, 428, 248 P. 34, 35 (1926).
Thus, at all times since Arizona joined the Union, there have been two complementary levels of protection against improvident state legislative or executive disposal of Arizona's school trust land. The dispositive issue in the present case is whether either the Enabling Act or the Arizona Constitution allows a state school district to condemn a tract of Arizona's school trust land.
B. The Enabling Act
The Enabling Act is a federal law. It provides a minimum guarantee for the integrity of state school trust land. Like the analogous provisions in the Arizona Constitution, § 28 of the Enabling Act ostensibly requires that the state only sell or dispose of school trust land at a duly advertised public auction following appraisal. However, the United States Supreme Court has declined to give effect to the literal protections of the Enabling Act.
The United States Supreme Court confirmed an emphatic incursion on the explicit language of the Enabling Act in Lassen v. Arizona ex rel. Arizona Highway Department, 385 U.S. 458, 87 S.Ct. 584, 17 L.Ed.2d 515 (1967). In that case, in accordance with the plain terms of the Enabling Act, the state land department attempted to force the state and county highway departments to pay for material sites and easements on state school trust land. This would have curtailed a fifty-year practice to the contrary. The state highway department successfully challenged this change by judicial action. The Arizona Supreme Court affirmed, reasoning that the easements and material sites did no damage to trust land and actually created an overall benefit to the trust and to the state. State v. Lassen, 99 Ariz. 161, 407 P.2d 747 (1965). Thus, the Court held that the state could acquire highway easements across school trust land without payment. Id. The state land department then appealed to the United States Supreme Court.
*540 On appeal, the United States Supreme Court first noted our view that the Enabling Act restrictions were inapplicable to state acquisitions of less than a fee interest and stated that this "contention [was] plainly foreclosed" by the language of the act which expressly applies to "[e]very sale, lease, conveyance or contract." Lassen, 385 U.S. at 462 n. 6, 87 S.Ct. at 586 n. 6. The Court held, further, that Congress had intended to ensure full compensation to the trust fund from any use or disposal of the trust land. Id. at 463, 87 S.Ct. at 587. Therefore, the state was required to pay "full compensation"  appraised value  "for the land it uses." Id. at 465, 87 S.Ct. at 588.
Although it took a strict view of the full compensation provision of the Enabling Act, the Court declined to literally construe the public notice, public auction and high bid provisions of the same Act. Reasoning that the latter restrictions were intended to guarantee only that the trust fund would receive "appropriate compensation for trust lands," the Court concluded that it was unnecessary to impose such conditions "on transfers in which the abuses they were intended to prevent are not likely to occur." Id. at 464, 87 S.Ct. at 587. The Court held, therefore, that "Arizona need not offer public notice or conduct a public sale" on acquisitions of trust lands by the state highway department. Id. at 465, 87 S.Ct. at 588. The Court's holding on this point was reinforced by its belief that the public notice/public sale provisions of the Enabling Act were useless in an acquisition by a state agency because the state eventually could condemn the land in any event. Id. at 464, 87 S.Ct. at 587.
The conclusion to be drawn from Lassen, of course, is that the federal act allows a state agency to acquire an interest in school trust land by either negotiation or condemnation. On any such acquisition, the agency must pay appraised value, but need not comply with the express language of the Enabling Act requiring public notice and public auction. If all that were involved in the present case was the interpretation of federal law, the Lassen interpretation of the Enabling Act would be binding precedent. However, we must answer to another authority  the Arizona Constitution.
C. The Arizona Constitution
When Arizona accepted the school trust land from Congress, the people of our state agreed to hold and dispose of this valuable asset only as provided in the Enabling Act and in the state constitution, and only for the educational goals outlined in the grant. Ariz. Const. art. 10, § 1. Our state charter plainly says that the state may not sell, lease or otherwise dispose of school trust land other than to the highest and best bidder at a duly advertised public auction. Ariz. Const. art. 10, §§ 3-4. In no event may the state transfer the land for less than its appraised value. Id.
Condemnation of state school trust land ensures that the school trust will at least receive the judicially verified appraised value of the condemned land. See, e.g., In re Condemnation of Lands in St. Louis County, 124 Minn. 271, 277-78, 144 N.W. 960, 962 (1914). However, the exercise of eminent domain does not allow the additional profit to the trust which may come from competitive bidding at an advertised public auction. Gladden Farms, Inc. v. State, 129 Ariz. 516, 520, 633 P.2d 325, 329 (1981). This is particularly true in the vicinity of our perpetually expanding urban areas, where the most expert appraisal might underestimate the true demand for an undeveloped parcel of real estate. Therefore, wise public policy encourages us to adhere to the salutary protections contained in our state charter.
Of course, even if we questioned the continuing wisdom of the trust restrictions enumerated in our constitution, we are obligated to implement them. Gladden Farms, 129 Ariz. at 521, 633 P.2d at 330. See also Stillman v. Marston, 107 Ariz. 208, 209, 484 P.2d 628, 629 (1971). We have no right to delete terms from the plain language of its text. See, e.g., Bohannan v. Corporation Commission, 82 Ariz. 299, 302, 313 P.2d 379, 381 (1957). The Arizona Constitution clearly describes *541 public auction as the proper method of disposal of our school trust land. Gladden Farms, supra. We cannot permit disposals that do not fit within the scope of the enumerated methods. Id.; Morris v. Arizona Corporation Commission, 24 Ariz. App. 454, 456, 539 P.2d 928, 930 (1975).
Lassen holds that condemnation is a permissible method of disposal. With all due respect for the views the United States Supreme Court expressed in Lassen, we decline to follow that case in interpreting the identical language in the Arizona Constitution. We make this decision as a matter of state law on independent state grounds. See Michigan v. Long, 463 U.S. 1032, 1037-44, 103 S.Ct. 3469, 3474-78, 77 L.Ed.2d 1201 (1983). Although we fully understand the reasoning of the Supreme Court, we firmly believe that we may not ignore the express words contained in the Arizona Constitution. Our constitution requires public notice, public auction and sale to the highest and best bidder. The words are plain and specific, and accomplish practical goals that the Lassen rule overlooks. The Enabling Act, as interpreted in Lassen, merely sets out the minimum protection for our state trust land. We independently conclude that our state constitution does much more. Our view does create some divergence between state and federal interpretations of substantially identical provisions of organic laws:
We acknowledge that uniformity is desirable. However, the concept of federalism assumes the power, and duty, of independence in interpreting our own organic law. With all deference, therefore, we cannot and should not follow federal precedent blindly.
Pool v. Superior Court, 139 Ariz. 98, 108, 677 P.2d 261, 271 (1984). See also Feldman & Abney, The Double Security of Federalism, 20 ARIZ.ST.L.J. 1, 4 (1988).
CONCLUSION
We conclude that the state may not dispose of its school trust lands other than by compliance with the specific terms and conditions of the Arizona Constitution.[2] Condemnation does not fit within Arizona's constitutional framework, nor does it guarantee the highest possible return for the trust. We therefore affirm the trial court's dismissal of this action.
GORDON, C.J., and CAMERON and HOLOHAN, JJ., concur.
MOELLER, J., did not participate in the determination of this matter.
NOTES
[1] In Arizona, relief formerly obtained by writs of prohibition, mandamus or certiorari is now obtained by "special action." Rule 1, Arizona Rules of Procedure for Special Actions, 17A A.R.S.
[2] Because of our disposition of this matter on constitutional grounds, we do not reach the question whether a school district might statutorily condemn non-trust state land in appropriate circumstances.