SUPREME COURT OF ARIZONA

| | |
|---|---|
| JUAN CARLOS ESCAMILLA, a qualified elector of the City of San Luis, Yuma County, State of Arizona, | )<br>)<br>)<br>) | Arizona Supreme Court<br>No. CV-12-0039-AP/EL |
| | ) | Yuma County |
| | ) | Superior Court |
| Plaintiff/Appellee, | ) | No. CV201101582 |
| | ) | |
| v. | ) | |
| | ) | |
| SONIA CUELLO, in her capacity as the City Clerk of the City of San Luis, Arizona, | )<br>)<br>) | **O P I N I O N** |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ALEJANDRINA CABRERA, a candidate for elected office, | )<br>) | |
| | ) | |
| Defendant/Appellant. | ) | |
| _____ | ) | |

Appeal from the Superior Court in Yuma County
The Honorable John Neff Nelson, Judge

**AFFIRMED**
_____


GLENN J. GIMBUT, CITY ATTORNEY                                    San Luis
      By   Glenn J. Gimbut, City Attorney

And

ELLEN M. VAN RIPER, ATTORNEY AT LAW                               Phoenix
      By   Ellen M. Van Riper

And

TOROK LAW OFFICE, PLLC                                            Yuma
      By   Gregory T. Torok
Attorneys for Juan Carlos Escamilla

LAW OFFICES OF CORNELIUS CANDY CAMARENA, P.C.                    Yuma
     By   C. Candy Camarena
Attorney for Sonia Cuello

EDGAR & MINORE, P.C.                                             Yuma
     By   John R. Minore
          Richard J. Edgar

And

GARCIA, HENGL, KINSEY & VILLARREAL, P.L.C.                       Yuma
     By   John S. Garcia
          Brandon S. Kinsey
          Ryan C. Hengl
Attorneys for Alejandrina Cabrera
_____

**B R U T I N E L**, Justice

¶1      On January 27, 2012, the Yuma County Superior Court disqualified Alejandrina Cabrera under A.R.S. § 38-201(C) (2001) from appearing on the ballot as a candidate for the San Luis City Council.  On February 7, 2012, we affirmed the superior court's judgment, stating that an opinion would follow.  This is that opinion.

## I. FACTS AND PROCEDURAL BACKGROUND

¶2      On December 29, 2011, San Luis Mayor Juan Carlos Escamilla, in his capacity as a qualified elector for the city, brought a special action seeking to disqualify Cabrera as a candidate for city council and naming Sonia Cuello in her capacity as the San Luis City Clerk.  He alleged that Cabrera's name should be excluded from the ballot for the March 2012 election because she cannot read, write, and speak the English

2

language as required by § 38-201(C).

¶3        After an evidentiary hearing, the superior court precluded her from the ballot.  Concluding that § 38-201(C)'s language requirement must be read "in the context of the political office at issue," the court considered expert testimony and observed Cabrera testify (including in response to the court's questions) and found that she is not sufficiently proficient in English to perform as a city council member for San Luis.

¶4        Cabrera filed an expedited appeal in this Court pursuant to A.R.S. § 16-351(A) (2006).

## II. DISCUSSION

### A. Special Action Jurisdiction

¶5        In his special action, Escamilla sought an order to show cause why the City Clerk should not be enjoined from placing Cabrera's name on the ballot.  The trial court denied Cabrera's motion to dismiss, ruling that Escamilla properly brought this case as a special action under Rule 3(b), Ariz. R.P. Spec. Act., and sufficiently demanded injunctive relief under A.R.S. § 16-351.  Cabrera argues that the court erred in allowing the case to proceed as a special action because it should have instead been filed as a complaint for injunctive relief.  We disagree.

¶6        In *Mandraes v. Hungerford*, 127 Ariz. 585, 587, 623

3

P.2d 15, 17 (1981), we held that filing a petition for injunctive relief and securing an order to show cause was an appropriate way to challenge a candidate's qualifications for the ballot. Escamilla did so here. His doing so through a petition for special action rather than a complaint for injunctive relief does not affect the validity of his challenge.

**B. Timeliness of Trial Court Order**

¶7    Cabrera asserts that the superior court erred in issuing its order twenty-nine days after Escamilla filed the complaint because A.R.S. § 16-351(A) directs trial courts to "hear and render a decision" on an election matter within ten days after the action is filed. Cabrera concedes that in *Brousseau v. Fitzgerald*, 138 Ariz. 453, 456, 675 P.2d 713, 716 (1984), we interpreted this statutory time limit as directive and not jurisdictional. But she argues that the filing and prosecution of this case unfairly left her little time to appeal and that Escamilla failed to diligently prosecute this case. When a non-jurisdictional deadline is not met, the relevant inquiry is whether a party suffered prejudice because of the delay. *See Bee v. Day*, 218 Ariz. 505, 507 ¶ 7, 189 P.3d 1078, 1080 (2008).

¶8    Here, the trial court's processing of the case left sufficient time for expedited appellate review before the ballot printing deadline. And Escamilla is not at fault for any delay;

4

he diligently prosecuted his case, which is evidenced by his serving Cabrera immediately and promptly moving to have an expert appointed and Cabrera tested. Moreover, some delay is due to Cabrera's own tardiness in filing her answer below. Because the § 16-351(A) deadline for decision is not jurisdictional and Cabrera has not shown prejudice, we find no error. Given the expedited nature of challenges to candidate qualifications, however, we emphasize that trial courts should render decisions within § 16-351's ten-day deadline.

## C. Proficiency Standard

¶9       Arizona law has required English proficiency as a qualification for public office since before statehood. The Territorial Code provided that "[n]o person who cannot write and read in the English language shall be eligible to hold any territorial, county, precinct or district office in the Territory of Arizona." *See* Ariz. Civ. Code 1901, tit. 1, ch. 14, § 199; *see also* Ariz. Civ. Code 1913, tit. 1, ch. 18, § 158 ("No person who cannot speak, write, and read the English language shall be eligible to hold any state, county, or precinct office in the state of Arizona.").

¶10       This longstanding requirement is repeated in both our Enabling Act and Constitution. The Enabling Act states "that ability to read, write, speak, and understand the English language sufficiently well to conduct the duties of the office

5

without the aid of an interpreter shall be a necessary qualification for all state officers and members of the state legislature." Act of June 20, 1910, ch. 310, § 20, 36 Stat. 557, 570 ("Enabling Act"). The Arizona Constitution contains this same requirement. Ariz. Const. art. 20, ¶ 8.

¶11 The proficiency requirement adopted in the Territorial Code was carried forward in the early versions of the Arizona Code and eventually reenacted with minor changes as § 38-201(C) in the 1956 Code. Section 38-201(C) provides that "[a] person who is unable to speak, write and read the English language is not eligible to hold a state, county, city, town or precinct office in the state, whether elective or appointive, and no certificate of election or commission shall issue to a person so disqualified." The trial court found that this statute would be "rendered meaningless" if "it were interpreted as having no standard or only requiring minimal or bare proficiency at speaking, reading, and writing the English language." The court narrowly construed the statute to require "sufficient proficiency in speaking, reading, and writing the English language" to understand and perform the duties of the office sought.

¶12 Cabrera argues that the trial court improperly expanded this statute by requiring some degree of English fluency in addition to the statutorily required ability to read,

6

write, and speak English. Because she read aloud council meeting minutes printed in English and was able during her testimony to engage in some basic conversation using English words, Cabrera contends she has met the statutory requirement.

¶13     We review a trial court's interpretation of a statute de novo. *Ballesteros v. Am. Standard Ins. Co. of Wis.*, 226 Ariz. 345, 347 ¶ 7, 248 P.3d 193, 195 (2011). "[D]isqualifications provided by the legislature are construed strictly and there is a presumption in favor of the eligibility of one who had been elected or appointed to public office." *Shirley v. Superior Court* (*Minyard*), 109 Ariz. 510, 515, 513 P.2d 939, 944 (1973); *see also McCarthy v. State ex rel. Harless*, 55 Ariz. 328, 335, 101 P.2d 449, 451 (1940) (recognizing same standard).

¶14     We think that the same principles should apply to candidates' eligibility to run for office. *See, e.g., Bysiewicz v. Dinardo*, 6 A.3d 726, 738 (Conn. 2010) (citing cases using above standard for candidate eligibility to run for office); *Municipality of Anchorage v. Mjos*, 179 P.3d 941, 943 (Alaska 2008) (noting that "there is a presumption in favor of candidate eligibility"). This approach respects "the right of the people to select officers of their own choosing." *McCarthy*, 55 Ariz. at 334, 101 P.2d at 451.

¶15     Our reading of § 38-201(C) is informed by the

7

requirements in the Enabling Act and Arizona Constitution of sufficient English proficiency to conduct the duties of the office without the aid of an interpreter. *See Gladden Farms, Inc. v. State*, 129 Ariz. 516, 518, 633 P.2d 325, 327 (1981) (noting that the Enabling Act is one of Arizona's fundamental laws and preempts conflicting state statutes). The statute's eligibility requirements apply to a broad range of public officials, including state officers. The qualifications mandated by Arizona's Enabling Act and Constitution, on the other hand, apply to all state officers and legislators. Those qualifications include an ability to "understand the English language sufficiently well to conduct the duties of the office without the aid of an interpreter." Enabling Act § 20; Ariz. Const. art. 20, § 8. Although § 38-201(C) does not include the quoted language, when the legislature reenacted the Territorial Code's proficiency requirement in the 1913 Arizona Code, the predecessor to § 38-201(C), it implicitly included the requirements of the Enabling Act and Constitution because it could not have statutorily imposed anything less with respect to state officers or legislators. *See Gladden Farms*, 129 Ariz. at 518, 633 P.2d at 327.

¶16    When read in conjunction with Arizona's Enabling Act and Constitution, § 38-201(C) means that to qualify for a public office, a candidate must possess sufficient proficiency in the

8

English language to conduct the duties of the office. To construe the statute as requiring that a candidate only be able to read, write, and speak English, without requiring comprehension of the language, would be incompatible with Arizona's fundamental law. The most plausible and harmonious reading of the statute is that it requires a sufficient level of proficiency of the English language to conduct the duties of the office without the aid of an interpreter.

¶17 The testimony below supports the trial court's conclusions that Cabrera failed to comprehend the questions posed to her. Her testimony showed minimal English language comprehension and displayed, as the expert observed, a "large gap" between her level of understanding and that required to serve as a city councilmember. Although she read aloud from various city council meeting documents, Cabrera could not answer elementary questions about what she had read or what had occurred at these meetings.

¶18 Section 38-201(C) does not require any specific level of proficiency other than that required to be able to conduct the duties of the office. In this case, the expert, Dr. Eggington, testified that Cabrera reads at a ninth or tenth grade reading level. If the statute required only proficiency in reading English, this testimony would support a finding of sufficient proficiency. But the statute also requires the

9

ability to speak English, and Dr. Eggington testified that "speaking proficiency is the strongest marker of overall proficiency" in considering whether a person can speak, read, and write a language. Based on his interview of Cabrera and objective testing, Dr. Eggington determined that she has "minimal survival proficiency" in spoken English. He explained that "she is able to perform certain courtesy requirements and maintain simple face-to-face conversation on familiar topics," but otherwise cannot follow a conversation. His testimony about the "large gap between [her] ability in speaking English and what is needed to perform City Councilman duties," as well as the trial court's own observations of Cabrera's difficulties in understanding and communicating in English, support the trial court's findings.

¶19 We emphasize that § 38-201(C) requires only a functional ability to read, speak, and write English. The statute does not authorize a literacy test or an intelligence test and does not require anything other than functional comprehension of English in everyday usage. Here, Cabrera's inability to comprehend English was clear and the trial court properly disqualified her under the statute.

**D. Expert Testimony**

¶20 Cabrera next argues that the trial court erred in admitting Dr. Eggington's opinions because he used unreliable

10

testing methods, attended no city council meetings, did not establish a baseline of English proficiency required to hold the office of councilmember, and did not account for Cabrera's hearing disability. Trial courts have broad discretion in determining whether to admit expert testimony, and "we will not overturn a trial judge's ruling on this issue unless there is a clear abuse of discretion." *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 505, 917 P.2d 222, 234 (1996). Arizona Rule of Evidence 702 provides the requirements for admitting expert testimony.[1]

¶21    Dr. Eggington's curriculum vitae shows his extensive expertise in linguistics. To determine the language skills necessary to hold the office of city councilmember, he reviewed a random sampling of San Luis City Council meeting minutes, agendas, and reports, plus audio recordings of council meetings for a two-year period. He also had Cabrera perform three proficiency tests, two of which are widely used by government agencies to determine language proficiency and a third that has been published in peer-reviewed articles. His opinion that Cabrera "has minimal survival proficiency" and "could not adequately function as a Council member in the Council meetings"

---

[1]    Cabrera bases her arguments on a version of Rule 702 that was substantively changed effective January 1, 2012. That change, however, has no bearing on the issue presented here.

11

was based on these tests, his interviews of her, and his review of the city council materials. Rule 702's requirements were met.

¶22    Cabrera also argues that the trial court should have disqualified Dr. Eggington because he failed to establish a baseline of English proficiency. Dr. Eggington testified that he was not hired to establish a baseline but rather to investigate and determine whether Cabrera could function at a city council meeting. He concluded that "the gap between Miss Cabrera's measured proficiency and what [he] saw in the material that [he] received [was] . . . so large that [he] believe[d] that she cannot function." He properly focused on the relevant statutory requirements regarding Cabrera's ability to speak, read, and write English to hold a specific office. *See* § 38-201(C).

¶23    Dr. Eggington also testified that although a hearing problem could affect the ability to acquire language proficiency, he did not observe any evidence of hearing difficulties when he interviewed Cabrera or during testing. The trial court did not abuse its discretion in admitting the expert's testimony.

**E. Constitutional Challenge**

¶24    Finally, Cabrera argues that the trial court's interpretation of § 38-201(C) unconstitutionally violates her

12

right to participate in government. But there is no general constitutional right to seek or hold public office. "The State may require that a citizen meet more strict requirements to hold office than" to vote for that office. *Triano v. Massion*, 109 Ariz. 506, 508, 513 P.2d 935, 937 (1973); *see Sugarman v. Dougall*, 413 U.S. 634, 647 (1973) (stating that "'[e]ach State has the power to prescribe the qualifications of its officers and the manner in which they shall be chosen'" and that this power goes "to the heart of representative government" (quoting *Boyd v. Thayer*, 143 U.S. 135, 161 (1892)) (alteration in *Sugarman*)); *see also Clements v. Fashing*, 457 U.S. 957, 963 (1982) ("[T]he existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.'" (quoting *Bullock v. Carter*, 405 U.S. 134, 143 (1972))).

¶25 Cabrera relies on *Ruiz v. Hull*, 191 Ariz. 441, 957 P.2d 984 (1998), in which this Court held that the Arizona constitutional amendment adopting English as the state official language violated the First and Fourteenth Amendments to the United States Constitution. *Id.* at 444 ¶ 2, 957 P.2d at 987. But the concern in *Ruiz* was that public officers would be unable to communicate with non-English-speaking constituents, thus impeding the constituents in obtaining access to their government and limiting the political speech of public officials. *Id.* No similar concern exists here. Section 38-

13

201(C) does not prohibit speech in languages other than English, but instead requires public officials to have some functional ability in English, which enhances rather than impedes their ability to communicate with their constituents and the public. *Ruiz* is inapposite.

¶26 Arizona's organic law manifests a legitimate concern that those who hold elective office be minimally proficient in English in order to conduct the duties of their office without the aid of an interpreter. Such a requirement helps ensure that the public officer will in fact be able to understand and perform the functions of the office, including communications with English-speaking constituents and the public. Section 38-201(C) reflects that same concern.

¶27 We have already concluded that the trial court correctly interpreted § 38-201(C). This interpretation of the statute is not unconstitutional because there is no constitutional right to seek office and the language requirement reflects a legitimate concern of the Arizona Legislature. We also note that Cabrera is not forever barred from running for office. Should she obtain a sufficient English proficiency to perform as a city councilmember, she could then run for that office.

**F. Attorney Fees**

¶28 Escamilla requests attorney fees pursuant to A.R.S.

14

§ 12-349 (2003).  In our discretion, we decline to grant them.

**III. CONCLUSION**

**¶29**     For the reasons set forth above, we affirm the judgment of the superior court.

_____
                Robert M. Brutinel, Justice

CONCURRING:

_____
Rebecca White Berch, Chief Justice

_____
Scott Bales, Vice Chief Justice

_____
A. John Pelander, Justice

15