NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CITY OF TEMPE, *Plaintiff/Appellee*,

*v.*

STEVEN SUSSEX, et al., *Defendants/Appellants*.

No. 1 CA-CV 18-0149
FILED 6-13-2019

Appeal from the Superior Court in Maricopa County
No. CV 2016-007626
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

COUNSEL

Tempe City Attorney's Office, Tempe
By Shelley D. Cutts, Judith R. Baumann
*Counsel for Plaintiff/Appellee*

Wilenchik & Bartness PC, Phoenix
By John D. Wilenchik
*Co-Counsel for Defendants/Appellants*

Farley Robinson & Larsen, Phoenix
By Gregory A. Robinson
*Co-Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Randall M. Howe joined.

---

**C A M P B E L L**, Judge:

¶1        Steven and Virginia Sussex appeal the superior court's order granting summary judgment for the City of Tempe on its claim of ejectment and denying summary judgment on their counterclaims for declaratory judgment and inverse eminent domain or conversion. Because the City has demonstrated it has a valid subsisting interest in the contested property and the Sussexes have demonstrated none, we affirm.

### BACKGROUND

¶2        This appeal arises from a longstanding dispute over a parcel of land, complete with a more than century-old adobe house, on West 1st Street in Tempe ("the Property"). The relevant history began in the 18th century, when the United States government conducted a federal survey of the public domain that divided the vast expanse of territorial lands into a grid-like pattern of townships, each containing 36 approximately one-square-mile sections. *See, e.g.*, Timothy M. Hogan & Joy E. Herr-Cardillo, *100 Years of Keeping the Trust: The Historic Role of the Judiciary in Protecting Arizona's State Land Trust*, 44 Ariz. St. L.J. 589, 589-90 (2012). A center section of each township, Section 16, was reserved in trust for school funding. *Id.* at 590. By the 19th century, the federal government began disposing of huge tracts of unsettled Western territory to people and enterprises that would put the land to productive uses—homesteaders and railroads chief among them. *See, e.g.*, Rebecca W. Watson & Nora Pincus, *Public Land Legal Basics*, 36 E. Min. L. Found. § 5.02[2][b] (2015).

¶3        To further incentivize the expansion of railroad lines, the federal government passed several laws granting railroad companies various interests in sections of land running along the lines they constructed. *See id.* One such law, the General Railroad Right-of-Way Act of 1875, granted railroad companies rights-of-way through the public domain to build rail lines and to use and occupy adjacent lands for operational purposes and to build railway stations. *See, e.g.*, 73B C.J.S. Public Lands § 227 (2019).

¶4        During this land-disposition era, the federal government adopted a policy of making large land grants directly to new state governments for their use as a revenue source to support public education and other public institutions. *See, e.g.*, Hogan, 44 Ariz. St. L.J. at 589-90. When the United States Congress conferred statehood on Arizona in 1910, it gave the new state about nine million acres of federal land—including the lands designated by the federal survey—to be held in trust for the support of the common schools. *Gladden Farms, Inc. v. State*, 129 Ariz. 516, 518 (1981); Arizona-New Mexico Enabling Act §§ 24, 25 (1910) (the "Enabling Act"). Conscious of past frauds and abuses in other states, Congress incorporated strict language in the Enabling Act and included a requirement that "[s]aid lands shall not be sold . . . except to the highest and best bidder at a public auction . . . ." *Gladden Farms*, 129 Ariz. at 518; Enabling Act § 28.

¶5        These historical forces all contributed to the current dispute over the Property, which sits on one of the Section 16 plots designated by the federal survey. The Property has long been the subject of the competing claims of the Union Pacific Railroad Company, the State of Arizona, the City of Tempe, and the Property's current occupant the Sussexes, who are descendants of a family of early Arizonan settlers.

¶6        The Union Pacific Railroad Company, through its predecessors in interest (together, "Union Pacific"), claimed to have been granted exclusive use and occupancy rights to the Property through the General Railroad Right-of-Way Act of 1875. Claiming that its interest was tantamount to a fee estate, Union Pacific maintained that any interest in the property the federal government granted to the State via the Enabling Act was subject to the prior conveyance to Union Pacific. Although the exact nature of Union Pacific's interest was not resolved through litigation, Union Pacific and the Arizona State Land Department (the "Land Department") eventually settled their dispute in 2002. The settlement agreement contained no conclusion or admission by the Land Department concerning "the rights, estate or interests granted by the United States to Union Pacific or any other entity under the 1875 Act," but Union Pacific agreed to relinquish any and all claims it may have had in the Property as against the Land Department. In accordance with the agreement, the Land Department executed a quitclaim deed conveying the Property to Union Pacific in exchange for a payment of $1,050,000. Union Pacific then conveyed the Property to the City of Tempe through a series of quitclaim deeds—the first executed in 2002, the second in 2005—in exchange for a payment of over $1,554,000.

¶7         Even as these developments were taking place, the Property was being physically occupied by the Sussexes. They contend that Steven Sussex's ancestors settled on the Property well before Arizona achieved statehood and have been occupying it ever since. In 1892, Steven Sussex's great-grandfather purchased the adobe house from another settler, but no deed was ever recorded. In 1967, Steven Sussex's grandmother transferred whatever rights she had in the Property to him. The Sussexes have since maintained a "gate" around the Property and at various intervals allowed family members to live on the Property, ran a business from the Property, and stored vehicles and other items on the Property.

¶8         In 2015, following the City of Tempe's demand that they vacate the Property, the Sussexes brought an action against the City seeking to quiet title by claiming they had acquired the Property through adverse possession. *See Sussex v. City of Tempe*, 1 CA-CV 16-0207, 2017 WL 772434 at ¶¶ 2-4 (Ariz. App. Feb. 28, 2017) (mem. decision). The superior court granted the City's motion to dismiss and this court ultimately affirmed, concluding that the Sussexes could not obtain the Property from the City via adverse possession. *Id.* at ¶¶ 6, 15.  As a municipality, the City was exempt from the relevant statute of limitations and therefore immune to the Sussexes' adverse possession claim. *Id.* at ¶ 15.

¶9         In May 2016, the City filed a complaint to eject the Sussexes from the Property pursuant to Arizona Revised Statutes ("A.R.S.") § 12-1251, alleging it had a valid subsisting interest in the Property as both the legal and record owner. The Sussexes answered and counterclaimed for inverse eminent domain or conversion and for a declaratory judgment stating that the City had no title in the Property.

¶10        In their answer, the Sussexes presented the superior court with two alternative defenses claiming that the City's title was void: either (1) the State originally acquired fee title to the Property from the federal government and the Land Department therefore violated the Enabling Act by conveying the Property to Union Pacific without conducting a public auction, voiding all subsequent conveyances; or (2) Union Pacific originally acquired fee title to the Property from the federal government (excluding the Property from the later Enabling-Act grant), and the Sussexes eventually extinguished Union Pacific's title through adverse possession — meaning Union Pacific had no good title to convey to the City. In their answer and counterclaims, the Sussexes  did not ask the superior court to quiet title to the Property in their favor; rather, they argued that regardless of whether the State or Union Pacific originally acquired title to the Property, the City could not acquire title through either source and thus

4

had no valid basis for its ejectment claim. As a counterclaim, the Sussexes asked the court for a declaratory judgment that the City's title to the Property is void pursuant to their first defensive theory that the State failed to comply with the Enabling Act by conveying the Property without conducting a public auction and the City therefore had not acquired title.

¶11        The City moved to dismiss the Sussexes' counterclaims as barred by res judicata, arguing that they were again trying to quiet title in their favor after their 2015 adverse possession suit had already failed. In response, the Sussexes argued their counterclaims were not barred because they were not asking the court to quiet title in their favor; rather, they were merely disputing the validity of the City's title and its ability to eject them from the Property. The superior court denied the City's motion, ruling that the Sussexes' counterclaims were not barred by res judicata:

> In the 2015 case, [the Sussexes] sought to quiet title in [their] name based upon adverse possession. . . . In the case at hand, the City seeks to eject [the Sussexes] from the Property . . . [and] the City must prove it has a valid subsisting interest in the Property and a right to immediate possession. . . . Only a party having title or the right to immediate possession may bring an action for ejectment, and [the Sussexes'] Counterclaim for Declaratory judgment alleges that the City has no right to title or possession. The question of the City's title or right to possession was not in issue in the 2015 case; only [the Sussexes'] actions, as evidence of adverse possession, were in issue. Thus, *res judicata* does not apply to [the Sussexes'] Declaratory Judgment claim.

¶12        The City then moved for summary judgment, asserting claims for ejectment, quiet title, and continuing trespass. The Sussexes cross-moved for summary judgment on the City's claims, again arguing the City had no valid title to the Property either because the State had violated the Enabling Act in conveying the Property or because they had adversely possessed the Property from Union Pacific. The superior court rejected all of the Sussexes' claims and granted summary judgment to the City on its ejectment claim, ruling that the City had a valid subsisting interest in the Property and the Sussexes had no possessory interest in the Property. After the superior court denied their subsequent motion for reconsideration, the Sussexes appealed.

**DISCUSSION**

**¶13**         "On appeal from a summary judgment, we view the evidence in a light most favorable to the party against whom judgment was granted." *Desilva v. Baker*, 208 Ariz. 597, 600, ¶ 10 (App. 2004). "We review de novo the superior court's grant of summary judgment, including its assessment of the existence of factual disputes and its application of the law." *Coulter v. Grant Thornton, LLP*, 241 Ariz. 440, 447, ¶ 23 (App. 2017). We will affirm the entry of summary judgment if it is correct for any reason. *Hawkins v. State*, 183 Ariz. 100, 103 (App. 1995).

**¶14**         In its motion for summary judgment, the City asked the superior court to grant its claim for ejectment pursuant to A.R.S. § 12-1251(A), which states:

> A person having a *valid subsisting interest* in real property and a *right to immediate possession thereof* may recover the property by action against any person acting as owner, landlord or tenant of the property claimed.

(Emphasis added.) "Ejectment is a possessory action in which the basis of the cause of action is the plaintiff's right of immediate possession. Absent the right to possess the property, one cannot sue for ejectment" under A.R.S. § 12-1251. *Ziggy's Opportunities, Inc. v. I-10 Indus. Park Developers*, 152 Ariz. 104, 107 (App. 1986) (citations omitted). "The purpose of an ejectment action, as opposed to quiet title action, is not to determine the relative and respective rights of all potential title holders, but rather the immediate rights between the plaintiff and the defendant involved in that particular litigation." 28A C.J.S. Ejectment § 2 (2019). However, "[t]he common law action of ejectment is now codified in this and most states . . . , and in such an action the Court may determine the question of which party has the paramount legal title to the premises for the purpose of determining who has the right to possession." *Old Bros. Lumber Co. v. Rushing*, 64 Ariz. 199, 204 (1946); *see also Taylor v. Sanford*, 100 Ariz. 346, 349 (1966).

## I.    The Sussexes' Enabling Act Claim

**¶15**         In its summary judgment ruling, the superior court found that the City had a valid subsisting interest in the Property and that the Sussexes had demonstrated none. The court ruled that the Sussexes' primary challenge to the validity of the City's title—through their theory that the State violated the public-auction requirement of the Enabling Act in disposing of the Property and that all subsequent conveyances were void as a matter of law—was time-barred by the statute of limitations for actions

against municipalities under A.R.S. § 12-821. The Sussexes argue the court erred by applying that statute of limitations because their challenge was only an affirmative defense against ejectment and not a claim they were obligated to bring against the City themselves.

**¶16**     Pursuant to A.R.S. § 12-821, "[a]ll actions against any public entity . . . shall be brought within one year after the cause of action accrues and not afterward." A cause of action against a public entity accrues "when a plaintiff discovers or reasonably should have discovered that an injury was caused by the government's action." *Canyon del Rio Inv'rs, LLC v. City of Flagstaff*, 227 Ariz. 336, 340, ¶ 16 (App. 2011).

**¶17**     The Arizona Supreme Court applied this statute in *Mayer Unified School District v. Winkleman*, in which two school districts brought suit against the Land Department for granting numerous easements to government entities without requiring compensation to the school land trust, in violation of the Enabling Act. 219 Ariz. 562, 564, ¶¶ 2-5 (2009). The Court held that the districts' action was time-barred pursuant to A.R.S. § 12-821 because several decades before the districts filed their action against the Land Department, the United States Supreme Court had issued its opinion in *Lassen v. Arizona ex. rel. Arizona Highway Department*, 385 U.S. 458 (1967). That case "held that government entities that acquire trust lands, even for uses that benefit the public, must compensate the school trust." *Mayer*, 219 Ariz. at 566, ¶ 17. Relying on *Lassen*, the Arizona Supreme Court held that the districts "reasonably should have known that compensation for the easements was required and had not been paid" more than one year before they filed their action and their claim was therefore time-barred. *Id.*

**¶18**     Here, the superior court found that the Sussexes knew or reasonably should have known that the State had allegedly violated the Enabling Act by not holding a public auction more than one year before they filed their answer and counterclaim for declaratory judgment. Specifically, the superior court found—based on items in the record—that the Sussexes knew of the quitclaim deeds purporting to convey title to the City no later than February 2015 and knew that the Property sits on designated school trust land before they brought their lawsuit for adverse possession in May 2015. The Sussexes had one year thereafter to file a suit against the Land Department, Union Pacific, and the City of Tempe for a violation of the Enabling Act, *see Baier v. Mayer Unified Sch. Dist.*, 224 Ariz. 433, 438, ¶ 16 (App. 2010) (recognizing that taxpayers may sue for violations of the Enabling Act), but did not do so until July 2016.

¶19        The Sussexes' characterization of their Enabling-Act-violation theory as both an affirmative defense in their answer and a counterclaim is insufficient to overcome the time bar to this claim. In *Mayer*, the Arizona Supreme Court determined that not even the school districts—direct beneficiaries of the state land trust—were permitted to circumvent A.R.S. § 12-821 to untimely assert that the Land Department violated the Enabling Act. 219 Ariz. at 566, ¶ 17; *see also Cook v. Town of Pinetop-Lakeside*, 232 Ariz. 173, 175, ¶ 8 (App. 2013) (noting that A.R.S. § 12-821's "'all actions' language does not lend itself to a limited interpretation that excludes some claims against a public entity") (citations omitted). Section 12-821 "extends to claims for declaratory relief," and "[w]hen a complaint asserts a claim for declaratory relief, the court looks for affirmative conduct by a party that removes the claim from 'the realm of mere possibility' and creates 'an actual controversy.'" *Rogers v. Bd of Regents of Univ. of Ariz.*, 233 Ariz. 262, 267-68, ¶ 17 (App. 2013). Here, the relevant "affirmative conduct" was the Sussexes' adverse possession suit, by which time the Sussexes were certainly on notice that the Property's ownership was in dispute. Once they learned of the State's alleged violation of the Enabling Act, the Sussexes were not permitted to simply do nothing, either as taxpayers or as occupants claiming ownership of the Property.

¶20        The Sussexes additionally argue that the superior court erred by not resolving the City's ejectment claim in accordance with A.R.S. § 12-1252(A), which states that a "plaintiff must recover on the strength of his own title." Although the superior court erred by finding that subsection (A) only "applies in cases of joint ownership, such as tenants in common or joint tenancy," the error was not material to the outcome of the court's ruling.

¶21        Although § 12-1252(B) pertains to actions concerning tenants in common or joint tenants, nothing in the statute limits subsection (A)'s application to co-tenancies. The heading of the article under which A.R.S. § 12-1252 falls reads "Recovery of Real Property," and subsection (B) simply applies extra evidentiary requirements to cases specifically involving joint ownership. *See State ex rel. Montgomery v. Harris*, 237 Ariz. 98, 101-02, ¶ 13 (2014) ("[W]e consider a statute in light of its place in the statutory scheme, and although statutory title headings are not part of the law, they can aid in its interpretation.").

¶22        Regardless, "[t]here is a rebuttable presumption that record title accurately reflects the ownership interest in the real property." *Boone v. Grier*, 142 Ariz. 178, 182 (App. 1984) (explaining that plaintiffs claiming an interest in real property had the burden of overcoming the presumption that the record-title holder was the rightful owner). The Sussexes presented

no facts or valid arguments rebutting the presumption that the City's quitclaim deeds reflected its valid title to the Property. The superior court effectively determined, and we agree, that the City had the stronger, paramount legal title and the Sussexes had demonstrated none, in accordance with the prescription of A.R.S. § 12-1252(A).

¶23 Under either his Enabling-Act or adverse-possession theory, the Sussexes have failed to demonstrate that they have any claim to title of the Property and failed to call into question the strength of the record title held by the City. We therefore affirm the superior court's grant of summary judgment on the City's claim of ejectment.

## II. The Sussexes' Adverse Possession Claim

¶24 Further, although the superior court did not explicitly address the Sussexes' alternative argument that they acquired title to the Property via adverse possession from Union Pacific, the Sussexes already tried and failed to acquire title to the Property through an adverse possession claim in a previous lawsuit against the City. *See Sussex*, 1 CA-CV 16-0207, 2017 WL 772434 at 1, ¶¶ 3-4 . "The doctrine of claim preclusion, or res judicata, bars a claim when a former judgment on the merits was rendered by a court of competent jurisdiction and the matter now in issue between the same parties or their privities was, or might have been, determined in the former action." *Tumacacori Mission Land Dev., Ltd. v. Union Pac. R.R. Co.*, 231 Ariz. 517, 519, ¶ 6 (App. 2013) (internal quotation omitted). The superior court denied the City's motion to dismiss the Sussexes' declaratory judgment claim, explaining that res judicata did not apply to the Sussexes Enabling-Act theory because it focused on the City's right to title rather than his own, and therefore it need not have been determined in the previous suit. The Sussexes' current adverse-possession theory against Union Pacific, however, does focus on his own right to title—and the time to address that issue was in his previous suit. *See Tumacacori*, 231 Ariz. at 520, ¶ 11 ("[C]laim preclusion does not prevent a party from presenting alternative theories in its first action, and it protects such competing interests" as finality in litigation, the prevention of harassment, and efficiency in the use of the courts.). We may affirm a summary judgment ruling if it is correct for any reason, *Hawkins*, 183 Ariz. at 103, and conclude that the Sussexes' alternative defensive theory that they acquired the Property through adverse possession from Union Pacific is barred by res judicata.

### III.  The Sussexes' Inverse Eminent Domain or Conversion Claims

¶25        The Sussexes further contend that the superior court separately erred by denying summary judgment on their claims of inverse eminent domain or conversion, arguing they are entitled to just compensation for any improvements they have made to the Property. The Sussexes have provided no conclusive evidence that they themselves hold title to, or any valid interests in, the Property—nor have they prevailed on their claims that the City lacks good title. To prevail in a suit for inverse eminent domain—a claim that is not governed by any statutory requirements—"a plaintiff must prove a governmental entity constructed or developed a public improvement that substantially interfered with the plaintiff's property right." *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cty.*, 222 Ariz. 515, 525, ¶ 18 (App. 2009). "To maintain an action for conversion, a plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion." *Case Corp. v. Gehrke*, 208 Ariz. 140, 143, ¶ 11 (App. 2004). The Sussexes have not demonstrated that they have any legitimate rights to the Property, that the City has substantially interfered with those alleged rights, or that the City has wrongfully converted any of their personal property. We therefore affirm the superior court's ruling on these claims.

### CONCLUSION

¶26        For the foregoing reasons, we affirm.

