928 P.2d 638

**PRINCESS PLAZA PARTNERS, an Arizona general partnership, Plaintiff–Appellee,**

v.

**STATE of Arizona, Arizona State Land Department, City of Scottsdale, a municipal corporation, Defendants–Appellants.**

**PRINCESS PLAZA PARTNERS, an Arizona general partnership, Plaintiff, Counterdefendant–Appellee,**

v.

**STATE of Arizona, Arizona State Land Department, City of Scottsdale, a municipal corporation, Defendants, Counterclaimants–Appellants.**

Nos. 1 CA–CV 93–0338, 1 CA–CV 93–0570.

Court of Appeals of Arizona, Division 1, Department E.

Nov. 28, 1995.

Reconsideration Granted Feb. 12, 1996.

Review Denied Jan. 6, 1997.

Cook Bluff, P.L.C. by Kathy W. Cook and Jeffrey Messing, Phoenix, for Plaintiff–Appellee.

Grant Woods, Attorney General, Arizona State Land Department by Theresa M. Craig and Patricia J. Boland, Assistant Attorneys General, Phoenix, for Defendants–Appellants.

## OPINION

MICHAEL D. RYAN, Judge.

The Arizona State Land Department ("the department") appeals from rulings made by the trial court in a lawsuit concerning a sixty-five-year lease of a 6.72 acre parcel of the state's school trust land[1] by Princess Plaza Partners ("PPP"). The superior court ruled on summary judgment that the lease, executed six years earlier, had not been made in substantial conformity with the provision of the Enabling Act requiring appraisal of the leasehold and, therefore, that the lease was void *ab initio*.

The trial court also determined that the parties should be returned to the positions they had held before execution of the void lease. After a bench trial, the court concluded that PPP had received no value from possessing the land for only six years of the lengthy lease term and, therefore, that it should not have had to pay anything for the possession. The trial court awarded damages to PPP, which included all the monies it had paid to date for the right to lease the property and the consequential damages it had incurred in trying to develop the property for commercial purposes.

The department appeals both from the ruling declaring the lease void and from the award of restitutionary and consequential damages.[2] It also objects to a portion of the award of attorneys' fees made to PPP.

---

1. "School trust land" is land that was granted by the federal government to Arizona at the time of its admission to the United States, to be held in trust for the benefit of the public schools. Its disposition is controlled by the Arizona–New Mexico Enabling Act, Act of June 20, 1910, Pub.L. No. 219 (ch. 310), 36 Stat. 557 (Enabling Act). *See Fain Land & Cattle Co. v. Hassell*, 163 Ariz. 587, 589, 790 P.2d 242, 244 (1990).

2. The department filed separate appeals from the judgment declaring the lease void, 1 CA–CV 93–0338, and from the judgment for damages, 1 CA–CV 93–0570, which we have consolidated by prior order for disposition.

### FACTS AND PROCEDURAL HISTORY

In 1985, the department designated certain state trust lands as "urban land suitable for urban planning" pursuant to the Urban Land Development Act, Ariz.Rev.Stat.Ann. ("A.R.S.") sections 37–331 to –338 (1993), including a portion of land that became known as Core South. A development plan was prepared for the Core South area that included the 6.72 acre parcel (hereafter Parcel 3b) which is the subject of this lawsuit. The plan was approved by the department, making the property ready for disposition.

In 1986, the department began procedures for processing long-term leases of the Core South properties by first appraising the land values. Independent appraisers performed appraisals in August that were reviewed and adjusted by the department's in-house appraisal staff in October. On October 31, 1986, the commissioner of the department reviewed and approved the appraised land values for the parcels involved. The appraised land value of Parcel 3b was set at $108,900 per acre.

Initially, the department proposed that Lease 03–94392–65 include Parcel 3b along with another portion of the Core South property designated as Parcel 4a. The terms of the lease, including the fair market rental, were first determined by James Schwartzmann, Director of Commercial Leasing for the department. The fair market rental was established through the development of a rent model containing the following elements: acreage; the appraised land value with the range of Consumer Price Index adjustments; and the appropriate percentages of land value to be charged as rent in each year. The rent model took into account market trends and rentals on other long-term leases, as well as the statutory necessity that a long-term lease be more beneficial to the trust than a sale.

Any sale of state trust lands or any lease of these lands for commercial purposes has to be approved by the department's board of appeals. A.R.S. § 37–132(A)(7) (1993). To serve on the board of appeals, a member must be experienced in the appraisal of all types of real estate. A.R.S. § 37–213(B) (1993). Before the board of appeals can approve a lease of state trust lands for commercial purposes, it must receive a lease/sale report from the commissioner showing that leasing the land would be more beneficial to the trust than selling it. A.R.S. §§ 37–214(B) (1993) and –335(F).

A lease/sale report on Lease 03–94392–65 was prepared for the board at the direction of the commissioner containing the analysis required by the statute and recommending that leasing the land would be more beneficial to the trust than selling it. Attached both to the lease/sale report and to the lease itself were copies of the rent model. Mr. Schwartzmann presented Lease 03–94392–65 to the board on December 15, 1986, and the board gave its approval on January 26, 1987.

Subsequently, the department decided to lease Parcels 3b and 4a separately. The rental value was changed to reflect the proper rent for each parcel. The department prepared a new lease/sale report and lease incorporating the changes. Mr. Schwartzmann presented an amended Lease 03–94392–65 containing only Parcel 3b to the board on February 27, 1987, and obtained the board's approval of the lease and the lease/sale report that same date.

The department published a notice of auction for Lease 03–94392–65 on or about March 23, 1987. The notice contained the major lease terms, the appraised land value, the rental, and the minimum bid components. Representatives of PPP reviewed the lease file prior to the auction.

The department auctioned Lease 03–94392–65 at public auction on or about June 11, 1987. Three bidders participated. After seventy-two bids, PPP was the successful bidder with a bid of $310,000 above the minimum required bid of $48,633.59.

In December of 1992, five-and-a-half years after acquiring the sixty-five-year lease of Parcel 3b, PPP filed this lawsuit claiming that it had paid too much for the lease. PPP alleged that after it had signed the lease, it learned that the City of Scottsdale planned for a major drainage channel to run across Parcel 3b. PPP would be required to pay for construction of the permanent drainage channel if it wanted to obtain approval from the

city to develop the property. The channel would be so large that it would prevent PPP from using nearly a third of the acreage in Parcel 3b and, therefore, would have a serious impact on the value of the remaining acreage. PPP further alleged that the department had known about the planned placement of the drainage channel prior to the auction and had given its approval, but had not informed PPP and had not taken this plan into account in appraising the property. PPP filed a multi-count complaint, alleging unilateral mistake, failure of consideration, innocent and negligent misrepresentation, breach of contract, RICO violations, and inverse condemnation.

In two additional counts of its complaint, PPP charged that it was entitled to have the lease declared void *ab initio* because of violations of the appraisal requirements of the Enabling Act, the Arizona Constitution, and relevant statutes. Specifically, it complained that the department's appraisal of the property was not an appraisal of the "true value" as required by the Enabling Act. It did not consider the acreage that would be unavailable for development because of the negative impact of the drainage channel on the remaining acreage. Secondly, it complained that the department had violated the "current appraisal" requirement of A.R.S. section 37–102(G) (1993) which provided as follows:

> The department shall order a new appraisal for the sale, exchange or long-term leasing of state land that does not have a current appraisal. A current appraisal is an appraisal made within at least one hundred eighty days prior to the sale, exchange or long-term leasing of state land.[3]

The commissioner had valued the land as of October 31, 1986. The auction for lease of the property was not conducted until June 11, 1987, more than 180 days later.

PPP chose to pursue a ruling that the lease was void because of the department's alleged violations of the appraisal requirements of the Enabling Act, the Arizona Constitution, and the statutes governing leasing of state trust lands. It requested summary judgment on that portion of its complaint.

In response to PPP's motion and as part of its own cross motion for summary judgment on these same claims, the department submitted the affidavit of James Schwartzmann, which addressed the allegations that the "current appraisal" requirement of A.R.S. section 37–102(G) had not been met. Schwartzmann pointed out that it was an appraisal of the lease value rather than an appraisal of the land value that was needed when state trust lands were to be leased. He testified that a commercial recommendation sheet with the appraised rental for the commercial lease is always approved and signed by the commissioner before the lease is presented to the board of appeals for approval and that this procedure meets statutory requirements for the appraisal of the lease within 180 days of the election. He also testified that, although no copy of the commercial recommendation sheet remained in the department's files and he lacked personal recollection of this commercial recommendation sheet, he was positive that he would have had it when he took the lease to the board because he never took a lease to the board without having a signed commercial recommendation sheet with the other documents to be presented.

PPP argued that a signed commercial recommendation sheet was the only evidence of a leasehold appraisal that satisfied the Enabling Act and that the department's inability to find the sheet proved that the appraisal had not been made. The trial court, too, focussed on this point. After allowing supplemental memoranda and additional oral argument, the trial court concluded that the issues it needed to resolve were (1) whether a specific document, signed by the commissioner, evidencing a leasehold appraisal was

---

**3.** A.R.S. section 37–102(G) was amended by Laws 1994, Ch. 177, § 1 and now reads as follows:

> The department shall reappraise or update its original appraisal of property to be leased, exchanged or sold if the board of appeals' approval of the lease or sale occurred more than one hundred eighty days before the auction.

Neither side has argued that this amendment would have any bearing on this appeal. Under our resolution of the appeal, we do not consider whether this amended statute would apply to this case.

necessary to show substantial compliance with the Enabling Act appraisal requirement; (2) whether the evidence showed that such a document had been signed; and (3) whether the requirement of substantial compliance with the Enabling Act could be affected by the statutory requirement of A.R.S. section 37–301 which provides that any person desiring to protest any term of a proposed auction for the lease of state land must file a written protest with the department within thirty days after the first day of publication of the terms of the proposed auction.

The trial court resolved these issues in favor of PPP finding as follows:

> That some document is necessary, [sic] that may take any form of valuation signed by the proper authority so designated. Circumstantial evidence may establish the valuations conducted and hearings held, but it is insufficient to rely on the fact that hearings were held to evidence that a document must therefore have been approved when the presumption is rebutted by the failure of a document to exist in any other public record. Therefore, the Rule 406 evidence is relevant, but not dispositive.

> The statute may not be so construed as to conflict with the enabling act.

The trial court concluded by granting relief to PPP on its summary judgment motion to void the lease.

The trial court then entered formal judgment, declaring the lease to be void *ab initio*[4] and providing that "[t]his Judgment is without prejudice to plaintiff's rights, if any, to seek damages based on the void lease." In a concurrent minute order, the court stated that relief on any of the other claims PPP had alleged was foregone because of PPP's election to obtain relief based on the void lease. The department filed an immediate appeal from the judgment finding the lease void because the court had entered language declaring the judgment final and appealable.

Further proceedings were held to decide whether the voiding of the lease for violation of the Enabling Act entitled PPP to restitutionary damages including consequential damages. The trial court rejected the department's argument that restitutionary and consequential damages are not recoverable on a lease declared void *ab initio* pursuant to the Enabling Act. It also rejected contentions that recovery was barred by laches and PPP's failure to comply with the notice of claim requirements of A.R.S. section 12–821 (Supp.1995). After hearing the evidence at trial, the court ruled that PPP was entitled to reimbursement of all the monies it had paid to date for the right to lease the property, concluding that PPP had received no value from possessing the land for only six years. It also awarded consequential damages to compensate PPP for the expenses it had incurred in trying to develop the property. The department filed a second appeal from the damage award.

## DISCUSSION

■ We first consider the trial court's summary judgment declaration that the lease is void *ab initio*. In reviewing a grant of summary judgment, we must decide whether there are genuine issues of disputed material fact. *In re Estate of Johnson,* 168 Ariz. 108, 109, 811 P.2d 360, 361 (App.1991). In the event no triable factual issue exists, we must then decide whether the substantive law was correctly applied and the moving party entitled to summary judgment as a matter of law. *Schroeder v. Hudgins,* 142 Ariz. 395, 397, 690 P.2d 114, 116 (App.1984). We are not bound by the trial court's conclusions of law. *Gary Outdoor Advertising Co. v. Sun Lodge, Inc.,* 133 Ariz. 240, 242, 650 P.2d 1222, 1224 (1982).

The department asks us to review the following issues on appeal:

(1) Did the trial court err in finding that there was no leasehold appraisal within the meaning of the Enabling Act?

(2) Did the trial court err in finding that the department did not substantially comply with the Enabling Act when there was a public auction, with a successful bid of $310,000 over the mini-

---

4. The department had counterclaimed against PPP for reimbursement of the cost of constructing a roadway for the property. The judgment also dismissed the counterclaim solely on the basis of the court's ruling declaring the lease void *ab initio*.

mum bid, and there was no claim that the auction price was less than the true appraised value?

(3) Did the trial court err in finding that there was no leasehold appraisal document signed by the commissioner?

(4) Did the trial court err in finding that A.R.S. section 37–301 did not operate to bar PPP's claims?

■ We believe the central question for us to decide is whether the trial court erred in finding that there was no leasehold appraisal within the meaning of the Enabling Act. If we conclude that there was substantial compliance with the Enabling Act requirements, we must consider whether a finding of a violation of our state's constitutional and/or statutory provisions regarding leasehold appraisals would justify the trial court's order declaring the lease void. Both these issues are legal ones that we review *de novo*. *Blum v. State*, 171 Ariz. 201, 204, 829 P.2d 1247, 1250 (App.1992).

■ The Enabling Act, which transferred approximately 9,000,000 acres of federal land to the State of Arizona at the time of statehood, was accepted by the people of Arizona. Ariz. Const. art. 20, ¶ 12. The terms of the Act cannot be altered, changed, amended or disregarded without an act of Congress. The Enabling Act is a fundamental law of this state. It is superior to the Arizona Constitution and laws enacted pursuant to the constitution may not conflict with the act. *Gladden Farms, Inc. v. State*, 129 Ariz. 516, 518, 633 P.2d 325, 327 (App.1981) (citing *Murphy v. State*, 65 Ariz. 338, 181 P.2d 336 (1947)).

■ Under the terms of the Enabling Act, the state must hold the lands in trust for the benefit of the public schools and is prohibited from selling or otherwise disposing of the trust lands except under a few simple but extremely restrictive conditions. *Fain Land & Cattle Co. v. Hassell*, 163 Ariz. 587, 589, 790 P.2d 242, 244 (1990); *Deer Valley Unified Sch. Dist. v. Superior Court*, 157 Ariz. 537, 538, 760 P.2d 537, 538 (1988). The state may only sell or lease trust land to the highest bidder at public auction after public notice. Enabling Act § 28. No sale or other disposal may be made unless the land is first appraised for its "true value," and the state receives consideration equal to, or greater than, the appraised value. *Id.* As a sanction, the Enabling Act provides that any disposition of the trust land not in "substantial conformity" with its provisions is "null and void," despite any provisions of Arizona's constitution and laws to the contrary. *Id.* The rationale behind these strict requirements is that prior land grants to other states were poorly managed and Congress wanted to ensure that the same thing did not happen in Arizona and New Mexico, the two states governed by this Enabling Act. *Fain*, 163 Ariz. at 589, 790 P.2d at 244.

In *Lassen v. Arizona*, 385 U.S. 458, 463, 87 S.Ct. 584, 587, 17 L.Ed.2d 515 (1967), the United States Supreme Court noted that the purpose for the constraints in the Enabling Act is to assure that the trust receives full and fair compensation for trust lands. It stated that matters such as the method of transfer and the identity of the transferee are material only to assure that the state seek and obtain appropriate compensation for the trust. *Id.* In deciding in *Lassen* whether the state had to comply with the literal provisions of the Enabling Act where its highway department wanted to acquire rights of way and material sites on trust lands, the Court took a strict view of the full compensation provision of the Enabling Act. But it declined to construe literally the public notice, public auction, and high bid provisions of the Act. It reasoned that the latter restrictions were intended to guarantee only that the trust fund would receive "appropriate compensation for trust lands" and that it was unnecessary to impose such conditions "on transfers in which the abuses they were intended to prevent are not likely to occur." *Id.* at 464, 87 S.Ct. at 587. The Court held, therefore, that "Arizona need not offer public notice or conduct a public sale" on acquisitions of trust lands by the state highway department. *Id.* at 465, 87 S.Ct. at 588.

The framers of the Arizona Constitution independently incorporated the essential restrictions of the Enabling Act in article 10 of our state's constitution. In the *Deer Valley* case, our state supreme court, in interpreting

identical language in the Arizona Constitution, declined to follow the United States Supreme Court's view in *Lassen*. The court stated that the Enabling Act, as construed in *Lassen*, merely sets out the minimum protection for state trust land. It concluded that the Arizona Constitution does much more. The court held in *Deer Valley* that although *Lassen* holds that condemnation is a permissible method of disposal under the Enabling Act, it is not permissible under the identical provisions of the Arizona Constitution. 157 Ariz. at 541, 760 P.2d at 541.

Although the Arizona Supreme Court has concluded that the Arizona Constitution may provide greater protection for state trust land than the Enabling Act, it has also held that it is only violations of the Enabling Act, not violations of the Arizona Constitution, that nullify a disposition of trust lands. In *Fain*, the supreme court confronted the question of what the result would be if trust land is disposed of in a way that does not violate provisions of the Enabling Act but does violate the Arizona Constitution. 163 Ariz. at 596, 790 P.2d at 251. It noted that section 28 of the Enabling Act nullifies only those dispositions of trust property not made in substantial conformity with the provisions of the Enabling Act. *Id.* It recognized that article 10, section 8 of the Arizona Constitution, similarly, nullifies only those dispositions not made in substantial conformity with the provisions of the Enabling Act. *Id.* The court concluded:

> These provisions of our constitution do not nullify all dispositions of trust land not made in strict compliance with article 10 of our constitution. *The only dispositions of trust land that are nullified are those that do not comply with the Enabling Act.*

*Id.*

In *State v. Boyd*, 60 Ariz. 388, 138 P.2d 284 (1943), the court faced the question whether substantial conformity but not literal compliance with the requirements of the Enabling Act and of the constitution and statutes of Arizona for publishing notice would prevent the sale of trust property from being declared null and void. In finding the sale valid, the court said:

According to section 28 of the Enabling Act, "Every sale ... not made in substantial conformity with the provisions of this act shall be null and void, any provisions of the constitution or laws of the said state to the contrary notwithstanding" it is implied that every sale made in substantial conformity with the provisions of the act is valid, even if the Constitution and laws of the state are to the contrary.

*Id.* at 394, 138 P.2d at 286.

■ Clearly a lease, therefore, cannot be found void *ab initio* unless there has been no substantial conformity with the appraisal requirements of the Enabling Act. The trial court found the lease violated the Enabling Act because of lack of proof of the existence of a document signed by the commissioner or another authorized person stating the appraisal value of the leasehold. However, we reach a different conclusion.

Having an appraisal document signed by the commissioner is a requirement of statute. A.R.S. section 37–132(A)(5) (1993) provides for the "commissioner" to appraise all state lands for sale or lease. A.R.S. section 37–133 (1993) requires that decisions rendered by the commissioner be in writing. A.R.S. section 37–215(A) (1993) expressly provides that appraisals by the commissioner are "decisions."

■ Nothing in the Enabling Act, however, requires that the signature of the commissioner be on an appraisal document. Nor has PPP cited any authority suggesting that the Arizona statutes dealing with state trust lands have been incorporated into the Enabling Act. The Enabling Act is not concerned with specifics, only with insuring that lands and leaseholds be appraised at their true value, and that no sale or other disposal be made for a consideration less than the true value. The Enabling Act does not specify precisely what a leasehold appraisal consists of but, in *Alamo Land & Cattle Co. v. Arizona*, 424 U.S. 295, 303, 96 S.Ct. 910, 916, 47 L.Ed.2d 1 (1976), the United States Supreme Court characterized it as the "fair rental value of the possessory interest transferred by the lease."

The record here shows that the department went through a lengthy process to ensure that the appraisal requirements of the Enabling Act, as well as the public auction requirements, were met. Although no appraisal document bearing the signature of the commissioner could be produced, numerous other documents contained the leasehold appraisal figure and demonstrated how it was calculated by personnel within the department.

The department presented the affidavit testimony of James Schwartzmann, Director of Commercial Leasing, which stated substantially as follows. Schwartzmann negotiated the terms of the lease including the rental amount. A rental model was developed for the lease that had components consisting of the acreage, the appraised land value with the range of Consumer Price Index adjustments, and the percentages to be applied to the land value. The rent model is the land department's estimate of the fair market rental of the lease based upon market trends and rentals on other long-term state leases, the land value, negotiations with the potential lessee, the lease terms, and the need to assure that a long-term lease yields a higher benefit to the trust than a sale. The rent model or a listing of the components necessary to create it would have been attached to a commercial lease recommendation sheet, which should have been signed by the commissioner, but the same information was also attached to the lease itself and was incorporated into the lease/sale report.

The department also presented the affidavit of Richard Alvin Dickie, assistant director of the department's land disposition division. Dickie testified that although the commercial lease recommendation sheet contains the commissioner's appraisal of the fair market rental for the lease interest, this appraisal information is also contained in the lease itself and in the lease/sale report that is presented to the board of appeals for its approval of long-term leases.

■ PPP disputes this testimony. It argues that the rent model merely derives a proposed rental rate that does not consider the terms and conditions of the lease being auctioned and is therefore not a determina-tion of the leasehold's "true value." As support for this argument, however, PPP produces nothing other than the unsworn allegations of its counsel offered as argument in the answering brief. General statements or allegations of counsel are not sufficient to withstand affidavit testimony of the opposing party offered on summary judgment. *See, e.g., Nelson v. Nelson,* 164 Ariz. 135, 137, 791 P.2d 661, 663 (App.1990); *Matter of Estate of Kerr,* 137 Ariz. 25, 29–30, 667 P.2d 1351, 1355–56 (App.1983). PPP did not present competent evidence contradicting the department's testimony that the lease and the lease/sale report contained the relevant appraisal information.

As an additional safeguard, the lease and the lease/sale report were approved by the department's board of appeals as required by A.R.S. section 37–214 (1993). Under A.R.S. sections 37–132(A)(7) and –214, the board of appeals is also given the task of approving any lease for commercial purposes before the leasehold can be auctioned. The board cannot approve the lease unless it determines that the lease will result in obtaining a higher benefit to the trust than would result if the land were sold. *See* A.R.S. § 37–214(B). The board obviously cannot make such a decision without accepting the appraisal of both the land value and the leasehold value or making its own appraisal. The records from the two board meetings at which the lease was presented indicate that the board accepted not only the lease/sale analysis and the lease itself but also the underlying appraisals.

We are satisfied that there was substantial conformity with the provisions of the Enabling Act. PPP has not shown a lack of substantial conformity with the requirements of the Enabling Act that would entitle it to a declaration that the lease is void *ab initio.*

■ We do not believe anything in this analysis would preclude a court from holding a sale or lease of trust lands "voidable," thus allowing it to be rescinded, for violations of statutory provisions under appropriate circumstances though there may be substantial

conformity with Enabling Act provisions.[5] We agree with the department that such a ruling could not be sustained here, however, because PPP did not timely protest the lack of an appraisal signed by the commissioner. A.R.S. § 37–301. While this statute's requirement of timely protest of the terms of a proposed auction of state land can have no effect on violations of the Enabling Act, it would cut off claims for violation of statutes where the violations were known or should have been discovered.

▬▬ Here, PPP waited over five years after the auction to complain of the lack of an appraisal document signed by the commissioner. Even if the protest statute was not applicable in this case and we were free to decide whether this failure to comply with the statutory appraisal requirements provided grounds for rescission of the lease, we would not find PPP entitled to relief where it waited so long to request it. Rescission is governed by equitable principles. *Mahurin v. Schmeck,* 95 Ariz. 333, 390 P.2d 576 (1964). Persons seeking rescission must act promptly in stating an intent to rescind. *Dewey v. Arnold,* 159 Ariz. 65, 764 P.2d 1124 (App. 1988).

Although PPP denies that it ever saw an appraisal document signed by the commissioner, it argues that it had no reason to believe that there was not one in existence and, therefore, that it should not be faulted for acting too slowly in claiming that the lack of one entitled it to rescission. We do not agree.

A.R.S. section 37–133(A) requires that decisions of the commissioner be in writing and filed of record in his office. The commissioner's appraisal of a leasehold is one such "decision." The notice of public auction for the lease here required all applicants for purchase of the lease to inspect the lease documents. The written appraisal would surely be part of the lease documents the applicants were required to inspect. Moreover, it is reasonable to conclude that all applicants would be interested in knowing the value of the leasehold they were bidding to purchase. If a copy of the appraisal was not included as part of the lease documents, the applicant would be on notice to inquire.

PPP cannot excuse its failure to complain promptly about the lack of a written appraisal signed by the commissioner. PPP would not be entitled to rescission for this alleged violation of the statutory appraisal requirements.[6] Our decision on this issue, however, has no bearing on whether PPP will be entitled to rescission based on any of its other claims that have not yet been litigated.

### CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court that found the lease to be void due to lack of an appraisal. Because we find as a matter of law that PPP is not entitled to relief on its claim that there was no appraisal of the leasehold within the requirements of the Enabling Act, the Arizona Constitution, and the statutes governing disposition of school trust lands, we direct that summary judgment be entered for the department on this claim. *Anderson v. Country Life Insurance Co.,* 180 Ariz. 625, 886 P.2d 1381 (App.1994) (Where the issues can be decided as a matter of law, the appellate court has the authority both to vacate the trial court's grant of summary judgment in favor of one party and to enter summary judgment for the other party if appropriate).

The judgment awarding damages and attorneys' fees was dependent upon the judgment finding the lease void. Because we reversed the judgment finding the lease void, we must also reverse the judgment awarding damages and attorneys' fees. We do not

---

**5.** A "voidable" agreement would be one subject to rescission or ratification whereas a "void" agreement would be incapable of ratification or disaffirmance. *See, e.g., Hodges v. Hodges,* 118 Ariz. 572, 574, 578 P.2d 1001, 1003 (App.1978).

**6.** Our disposition in favor of the department on the particular issues discussed herein makes it unnecessary to consider the department's other

two issues on appeal: whether the trial court erred in concluding as a matter of law that no leasehold appraisal document had been signed by the commissioner; or whether the conducting of the public auction would have cured any alleged defect in the appraisal process in this instance.

reach the merits of any of the issues in the appeal from that judgment.

The trial court did not reach the merits on any of the other claims in PPP's complaint. We remand for further proceedings on the remaining claims. We express no opinion on the merits of any of those claims.

Finally, the record reveals that the department's counterclaim was dismissed solely based on the trial court's determination that the lease was void. Therefore, we reinstate the counterclaim for adjudication on the merits.

CONTRERAS, P.J., and GERBER, J., concur.

**NOTE:** The Honorable MICHAEL D. RYAN, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 3.