IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

|  |  |  |
|---|---|---|
| JERROLD COHEN, a married man; MELVIN ZUCKERMAN, a married man; and CR OPERATING, L.L.C., an Arizona limited liability company, | ) ) ) ) ) | |
| Plaintiffs/Counterdefendants/ Appellants, | ) ) ) | |
| v. | ) ) | 2 CA-CV 2012-0063 2 CA-CV 2012-0157 |
| LOVITT & TOUCHÉ, INC., an Arizona corporation, | ) ) ) | (Consolidated) DEPARTMENT B |
| Defendant/Counterclaimant/ Appellee. | ) ) ) | O P I N I O N |
| | ) ) | |
| JERROLD COHEN, a married man, | ) ) | |
| Plaintiff/Counterdefendant/ Appellant, | ) ) ) | |
| v. | ) ) | |
| GREENWICH INSURANCE COMPANY, a foreign corporation, | ) ) ) | |
| Defendant/Counterclaimant/ Appellee. | ) ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20092552

Honorable Ted B. Borek, Judge

REVERSED AND REMANDED

Gabroy, Rollman & Bossé, P.C.
  By Richard M. Rollman, John Gabroy,
    and Richard A. Brown                                          Tucson
                                                     Attorneys for Plaintiffs/
                                              Counterdefendants/Appellants


Sanders & Parks, P.C.
  By Garrick L. Gallagher, Jasmina Richter,
    and Shanks Leonhardt                                        Phoenix
                                                   Attorneys for Defendants/
                                             Counterclaimants/Appellees

E C K E R S T R O M, Judge.

¶1        Appellants Jerrold Cohen, Melvin Zuckerman, and CR Operating, L.L.C. (Cohen and Zuckerman), appeal from the trial court's grant of summary judgment in favor of appellee Lovitt & Touché, Inc. (Lovitt). For the following reasons, we vacate the court's order and remand for proceedings consistent with this decision.

**Factual and Procedural Background**

¶2        In reviewing a trial court's grant of a motion for summary judgment, we view the facts in the light most favorable to the party opposing the entry. *Gorman v. Pima Cnty.*, 230 Ariz. 506, ¶ 2, 287 P.3d 800, 801 (App. 2012). Appellants Jerrold Cohen and Melvin Zuckerman are directors and officers of CR Operating, L.L.C. Appellant CR Operating, L.L.C., is the entity that owns and operates the Canyon Ranch facility in Lenox, Massachusetts.[1] From 2005 to 2007, Cohen and Zuckerman, through

---

[1]Lovitt claims Cohen and Zuckerman's notice of appeal does not include CR Operating. But the notice of appeal names "Jerrold Cohen; et al.," and states "Plaintiffs

CR Operating, L.L.C., retained Lovitt's services as an insurance consultant. Acting on Lovitt's advice, they purchased two director and officer liability insurance policies.

¶3 In 2007, a class action lawsuit was filed against Canyon Ranch (Wood action), claiming the company had violated a Massachusetts statute requiring that all moneys collected as a "service" charge be paid directly to the company's employees (tip statute). The lawsuit was settled for approximately sixteen million dollars (Wood settlement). Under the tip statute, not only was the company liable for the damages, but Cohen and Zuckerman were personally liable as directors and officers. Because the company was insolvent, they paid the settlement costs personally.

¶4 Cohen and Zuckerman sought reimbursement under their director and officer liability policies. The insurance companies refused to compensate them, claiming the policies excluded coverage, or alternatively, that coverage for the cost of the Wood settlement was uninsurable as a matter of law. Cohen and Zuckerman filed suit against the insurance companies, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. They also filed suit against Lovitt, alleging negligence and breach of contract in failing to procure insurance that would have covered the settlement costs and negligent misrepresentation in failing to advise them of non-insured risks.

---

appeal." Plaintiffs are clearly identified as Jerrold Cohen, Melvin Zuckerman, and CR Operating, L.L.C., and therefore, if this did constitute a defect in the notice of appeal, it did not prejudice Lovitt, and the notice is accordingly sufficient as to all plaintiffs. *See Schwab v. Ames Constr.*, 207 Ariz. 56, ¶ 11, 83 P.3d 56, 59 (App. 2004) ("This court generally disfavors hypertechnical challenges to a notice of appeal . . . technical defects or omissions . . . do not render the notice ineffective absent prejudice to the appellee.").

¶5        The trial court granted summary judgment in favor of the insurance companies, finding that the payment to the Wood plaintiffs was restitutionary and that such payments were uninsurable as a matter of public policy. Cohen and Zuckerman conceded that, if the Wood settlement payments were uninsurable, Lovitt could not have been negligent in failing to procure insurance that would have covered them, nor could it have breached its contract to do so, and the court therefore granted summary judgment in favor of Lovitt on the negligence and bad faith claims. The court did not resolve Cohen and Zuckerman's claim for negligent misrepresentation, but directed entry of summary judgment on the claims of negligence and breach of contract pursuant to Rule 54(b), Ariz. R. Civ. P. Cohen and Zuckerman have since settled with the insurance companies and now appeal solely from the grant of summary judgment in favor of Lovitt. For the reasons discussed below, we reverse and remand.

**Summary Judgment in Favor of Lovitt**

¶6        We review a trial court's grant of summary judgment de novo, determining independently "whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Valder Law Offices v. Keenan Law Firm*, 212 Ariz. 244, ¶ 14, 129 P.3d 966, 971 (App. 2006). The sole issue before us is whether Lovitt could have procured an insurance policy that would have protected Cohen and Zuckerman against the Wood settlement payments. We therefore must determine whether restitutionary payments are potentially insurable under Arizona law or whether, as the trial court found, any agreement to insure such payments would be unenforceable because such payments are not "losses," or are uninsurable as a matter of law.

4

¶7 No Arizona case has squarely addressed whether losses incurred from unforeseen restitutionary payments are insurable. However, our supreme court has emphasized the societal benefits arising from the freedom of parties to contract and warned that courts must therefore be "hesitant to declare contractual provisions invalid on public policy grounds." *1800 Ocotillo, LLC v. WLB Group, Inc.*, 219 Ariz. 200, ¶ 8, 196 P.3d 222, 224 (2008).[2] Observing specifically that "[o]ur law generally presumes . . . that private parties are best able to determine if particular contractual terms serve their interests," the court set forth the following test:

> [A]bsent legislation specifying that a contractual term is unenforceable, courts should rely on public policy to displace the private ordering of relationships only when the term is contrary to an otherwise identifiable public policy that clearly outweighs any interests in the term's enforcement.

*Id.*, *citing* Restatement (Second) of Contracts § 178 (1981).

¶8 The Restatement, as adopted in *Ocotillo*, itemizes factors a court should consider in weighing these respective interests. 219 Ariz. 200, ¶ 8, 196 P.2d at 224; Restatement § 178. Factors that favor enforcement of a contract include the parties' justified expectations, forfeiture that would result if the contract were not enforced, and

---

[2]Arizona's case law reveals a strong preference for contract enforcement. *See, e.g.*, *Gaertner v. Sommer*, 148 Ariz. 421, 423-24, 714 P.2d 1316, 1318-19 (App. 1986) (contract to sell mobile home not invalid because selling agent was unlicensed); *E & S Insulation Co. of Ariz., Inc. v. E. L. Jones Constr. Co.*, 121 Ariz. 468, 470, 591 P.2d 560, 562 (App. 1979) (contract to build school building not invalid because contractor had not paid state/county taxes). This is particularly the case when dealing with sophisticated parties on relatively equal bargaining terms. *Salt River Project Agr. Improvement & Power Dist. v. Westinghouse Elec. Corp.*, 143 Ariz. 368, 383, 694 P.2d 198, 213 (1984), *abrogated on other grounds by Phelps v. Firebird Raceway, Inc.*, 210 Ariz. 403, 111 P.3d 1003 (2005).

public interest in having the term enforced. Restatement § 178. Factors that weigh against enforcement include the strength of the public policy involved, the likelihood that denying enforcement will further the policy, the seriousness and deliberateness of any misconduct involved, and the directness or attenuation between the misconduct and the contract term. *Id.*

¶9 Here, the trial court declined to apply the *Ocotillo* test in determining whether parties could contract to insure against acts resulting in restitutionary payments. Rather the court followed the reasoning of the courts of those jurisdictions which have addressed whether such payments may be insurable. *See Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1115 (9th Cir. 2006), *Level 3 Commc'ns, Inc. v. Fed. Ins. Co.*, 272 F.3d 908, 909-10 (7th Cir. 2001) (Posner, J.), *Bank of the W. v. Superior Court*, 833 P.2d 545, 553 (Cal. 1992), and *Reliance Group Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 594 N.Y.S.2d 20, 24 (N.Y. App. Div. 1993).

¶10 These cases all conclude that restitutionary payments may not be covered by insurance policies for two reasons. First, that restitutionary payments are not strictly "losses," given that the insured were not ultimately entitled to possess those assets in the first instance. *Unified W. Grocers*, 457 F.3d at 1115; *Level 3*, 272 F.3d at 910-11; *Bank of the W.*, 833 P.2d at 553 (concluding use of word "damages" does not include disgorgement orders); *Reliance Group Holdings*, 594 N.Y.S.2d at 24. But that analysis anchors itself in the traditional insurance policy language triggering coverage. It does not resolve whether such coverage should be available as a matter of public policy. Hypothetically, parties could negotiate other insurance policy language to expressly

6

insure business hardships arising from an unexpected duty to make a restitutionary payment.

¶11     More pertinent here is the second rationale found in these cases for barring such coverage—that "one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired." *Bank of the W.*, 833 P.2d at 553. But that rule is categorical and would render losses from restitutionary payments uninsurable, regardless of the specific language of the agreement or the specific circumstances of the claim:  "The insured's innocence and good faith are immaterial." *Nortex Oil & Gas Corp. v. Harbor Ins. Co.*, 456 S.W.2d 489, 494 (Tex. Civ. App. 1970) (oil company sued for conversion of oil could not recover under insurance contract even though conversion inadvertent); *Cent. Dauphin Sch. Dist. v. Am. Cas. Co.*, 426 A.2d 94, 97 (Pa. 1981) (school district could not recover for disgorgement of funds acquired through unlawful tax, even though tax imposed in good faith and without knowledge of unlawfulness).  The analysis in *Level 3* and its progeny thus focuses not on the conduct of the insured, but solely on the nature of the claim.  *See, e.g., Unified W. Grocers*, 457 F.3d at 1111-12, 1115 (indemnification and reimbursement from purely restitutionary claims forbidden as matter of public policy independent of court's conclusion that California law precludes coverage for willful wrongdoings).

¶12     Such an approach forecloses consideration of variation in contractual language which could substantially mitigate or even eliminate any public policy concerns.  For this reason, we cannot harmonize the categorical preclusion of insurance for restitutionary losses, compelled by *Level 3* and its progeny, with our state's own

7

approach mandating an exacting analysis of the impact of public policy on the enforceability of specific contractual agreements. "Absent legislation specifying that a contractual term is unenforceable," that approach requires us here to (1) presume "that private parties are best able to determine if particular contractual terms serve their interests" and, (2) in light of that presumption, weigh the particular beneficial features of a proposed agreement against any public policy concerns raised by it. *See Ocotillo*, 219 Ariz. 200, ¶ 8, 196 P.3d at 224. Therefore, before concluding that an insurance policy that would have covered the Wood settlement payments would be unenforceable as a matter of law, we must consider whether the public policy against insuring restitutionary payments would outweigh the interest in enforcing such a contract. *See id.* Factors that weigh against enforcing a provision that raises public policy concerns include

> (a) the strength of that policy as manifested by legislation or judicial decisions, (b) the likelihood that a refusal to enforce the term will further that policy, (c) the seriousness of any misconduct involved and the extent to which it was deliberate, and (d) the directness of the connection between that misconduct and the term.

Restatement (Second) of Contracts § 178 (1978).

¶13      The policy forbidding insurance coverage for restitutionary payments in Arizona is not strong; it has never been expressed in any legislation or judicial decisions. As discussed above, the concern raised by extra-jurisdictional case law is that allowing insurance coverage for restitutionary payments might incentivize the wrongful acquisition of property. *See Bank of the W.*, 833 P.2d at 553-54. But parties to an insurance contract are fully capable of drafting language that prohibits coverage when an

8

insured has intentionally or recklessly acquired property in a wrongful fashion. Here, while the record suggests Cohen and Zuckerman were negligent in failing to research Massachusetts labor laws before opening the resort facility, there was no evidence presented of any willful misconduct on their part. Thus, while potential policy language could substantially mitigate any public policy concern arising from coverage of restitutionary losses, the public has a countervailing interest in the enforcement of insurance policies protecting well-intentioned directors and officers from the type of unforeseen losses occurring here. Prohibiting such agreements altogether would discourage persons from acting as officers or directors of companies expanding to other states. The inability of officers and directors to insure for such personal liability arising from corporate expansion could meaningfully discourage such expansion and thereby chill commerce.

¶14 For these reasons, the factors in favor of enforcement of a hypothetical contract that would have covered the Wood settlement payments outweigh the factors against. We therefore conclude the trial court erred when it determined as a matter of law that Arizona law prohibits insurance coverage for restitutionary payments. We express no opinion, however, whether the policies obtained by Lovitt covered the losses claimed by Cohen and Zuckerman. We remand to the trial court for further proceedings consistent with this opinion.

## Attorney Fees

¶15 Cohen and Zuckerman request attorney fees in this appeal under A.R.S. § 12-341.01(A). In order to recover attorney fees under this statute, a party must be

9

successful. § 12-341.01(A).  Because resolution of this case is still pending, the issue of attorney fees shall abide the ultimate resolution of the case.

¶16      Lovitt likewise requests its attorney fees on appeal.  Because it is not the prevailing party, we deny the request.  *See* § 12-341.01.

**Conclusion**

¶17      For the foregoing reasons, we reverse the grant of summary judgment in favor of Lovitt and remand for proceedings consistent with this decision.

/s/ *Peter J. Eckerstrom*

PETER J. ECKERSTROM, Judge

CONCURRING:

/s/ *Philip G. Espinosa*

PHILIP G. ESPINOSA, Judge

/s/ *Michael Miller*

MICHAEL MILLER, Judge