NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SEDONA-OAK CREEK AIRPORT AUTHORITY INC,
*Plaintiff/Appellant/Cross-Appellee,*

*v.*

DAKOTA TERRITORY TOURS ACC, *Defendant/Appellee/Cross-Appellant.*

No. 1 CA-CV 20-0330
FILED 6-3-2021

Appeal from the Superior Court in Yavapai County
No. V1300CV201780272
The Honorable Krista M. Carman, Judge

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

COUNSEL

Gordon Rees Scully Mansukhani, Phoenix, AZ
By David O'Daniel
*Co-Counsel for Plaintiff/Appellant/Cross-Appellee*

Henze Cook Murphy PLLC, Phoenix, AZ
By Kiersten Murphy
*Co-Counsel for Plaintiff/Appellant/Cross-Appellee*

Buchalter PC, Irvine, CA
By Barbara E. Lichman, Paul J. Fraidenburgh, Daniel S. Shimell (argued)
*Co-Counsel for Plaintiff/Appellant/Cross-Appellee*

Ahwatukee Legal Office PC
By David L. Abney (argued)
*Co-Counsel for Defendant/Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Cynthia J. Bailey and Judge Lawrence F. Winthrop joined.

---

**M c M U R D I E**, Judge:

**¶1**         Plaintiff Sedona-Oak Creek Airport Authority, Inc. ("SOCAA") appeals from the superior court's summary judgment in favor of Defendant Dakota Territory Tours, ACC ("Dakota"). Dakota cross-appeals, asserting the court erred by applying a three-year statute of limitation to its restitution recovery. We affirm in part and reverse and remand for further proceedings consistent with this decision for the following reasons.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**         Dakota, an aerial tour company, leased space at the Sedona-Oak Creek Airport from SOCAA in various lease agreements tracing back to 2002. Over the years, the parties have had multiple disputes. One of these disputes resulted in Dakota filing a civil action against SOCAA in 2014. *Sedona-Oak Creek Airport Auth. Inc. v. Dakota Territory Tours ACC*, No. 1 CA-CV 20-0158, 2021 WL 97217, at *1, ¶ 3 (Ariz. App. Jan. 12, 2021) (mem. decision). The parties reached a settlement agreement in April 2017, before the lease expired. *Id*. The agreement provided Dakota would continue to lease the property on a month-to-month basis pending SOCAA's selection of a tenant through a request-for-proposal ("RFP") process. *Id*. Dakota and one other entity submitted proposals. *Id.* at ¶ 4. SOCAA selected the other entity and notified Dakota that it had thirty days to vacate the premises. *Id.* Dakota refused to leave and sought a restraining order to preclude SOCAA from evicting Dakota, arguing SOCAA had breached the settlement agreement in the RFP process. *Id.* at ¶ 5. After the superior court ruled against Dakota on the restraining order, SOCAA brought a forcible entry and detainer action to evict Dakota. *Id.* at ¶¶ 8–9. The court found that Dakota had wrongfully retained possession. *Id.* at ¶¶ 8-10.

2

¶3        Before obtaining the eviction order, SOCAA filed this breach-of-contract action in October 2017, claiming Dakota owed money under the expired leases. In the breach-of-contract action, SOCAA sought damages for Dakota's failure to pay the total amount due under the terms of the various leases. The most recent lease provided a fixed monthly rent of $2390 and a commercial activity fee ("CAF") of 2.5% of Dakota's gross receipts. SOCAA alleged Dakota had underpaid the CAF by approximately $390,000 between 2004 and 2017. In its answer, Dakota admitted, "leases and accompanying licenses have had provisions for monthly rent based in part on 2.5% of gross receipts." Dakota argued, however, the CAF was illegal per the federal Anti-Head Tax Act, 49 U.S.C. § 40116 ("AHTA"). Dakota also counterclaimed, alleging unjust enrichment and seeking restitution for the approximately $450,000 it had paid in CAF throughout its leases with SOCAA.

¶4        Dakota moved for summary judgment on its unjust enrichment counterclaim and provided a short supporting separate statement of facts per Arizona Rule of Civil Procedure ("Rule") 56(c)(3)(A). SOCAA adopted Dakota's statement of facts and cross-moved for summary judgment. SOCAA asserted the CAF was "unquestionably a charge imposed upon Dakota for using the facilities operated by SOCAA" and therefore fell within an exception to AHTA that allows for the collection of service charges from aircraft operators for their use of airport facilities. Determining that the CAF was not a service charge as contemplated by AHTA, the court ruled in favor of Dakota and against SOCAA on all claims by both parties.

¶5        Both parties agreed that Dakota's claim, if cognizable, was subject to the three-year statute of limitation under A.R.S. § 12-543. Therefore, the superior court determined that Dakota paid approximately $127,000 in CAF within the relevant period and ordered SOCAA to refund the CAF payments in that amount.

¶6        SOCAA moved for reconsideration, arguing: (1) the court lacked subject matter jurisdiction, (2) there is no private right of action under AHTA; (3) Dakota did not exhaust its administrative remedies, (4) Dakota is estopped from disputing the CAF, and (5) the court erred in interpreting the law. After the briefing, the superior court denied the motion and entered judgment in favor of Dakota and against SOCAA in the amount of $127,092 and awarded attorney's fees of approximately $78,000.

¶7        SOCAA moved for a new trial under Rule 59, arguing there were several genuine disputes of material fact. It further claimed the court

had not previously had the opportunity to consider SOCAA's contested factual issues because Dakota's motion for summary judgment was based on stipulated facts not authorized by its Board, and the court should grant a new trial because the judgment was based on Dakota's mischaracterization of the CAF. SOCAA simultaneously filed a Rule 60(a) motion to correct possible technical errors in the judgment.

¶8         SOCAA also filed a second Rule 59 motion and a second Rule 60(a) motion. The court denied the motions based partly on the fact that SOCAA had previously stipulated to the factual basis. The court noted that SOCAA's counsel acted within the scope of her legal authority by making the stipulation and observed that SOCAA's cross-motion relied on those same facts.

¶9         SOCAA moved for a new trial under Rule 59 for the third time. The court denied the motion. Following entry of a final judgment, SOCAA appealed and Dakota cross-appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶10         Summary judgment is proper when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). "We review a trial court's grant of summary judgment *de novo* and independently determine whether [the] court's legal conclusions were correct." *Goldman v. Sahl*, 248 Ariz. 512, 519, ¶ 16 (App. 2020) (quoting *Ledvina v. Cerasani*, 213 Ariz. 569, 570, ¶ 3 (App. 2006)); *Sign Here Petitions LLC v. Chavez*, 243 Ariz. 99, 104, ¶ 13 (App. 2017). "We view the facts in the light most favorable to the party against whom summary judgment was granted." *In re Est. of Gardner*, 230 Ariz. 329, 331, ¶ 7 (App. 2012). We review *de novo* the validity and enforceability of contracts and the construction and applicability of statutes. *Buckholtz v. Buckholtz*, 246 Ariz. 126, 129, ¶ 10 (App. 2019) (contracts); *Stein v. Sonus USA, Inc.*, 214 Ariz. 200, 201, ¶ 3 (App. 2007) (statutes).

**A.     Contract Provisions Are Unenforceable if They Violate Legislation or Other Identifiable Public Policy.**

¶11         "The ability to enforce a lease or contract is a right or privilege under Arizona law, subject only to reasonable regulation by the government when a public interest is involved." *Green Cross Med., Inc. v. Gally*, 242 Ariz. 293, 296, ¶ 10 (App. 2017); *Schrey v. Allison Steel Mfg. Co.*, 75 Ariz. 282, 286–87 (1953). "Parties have the legal right to make whatever contracts they desire, subject to liability for their breach except when 'the

4

acts to be performed under the contract are themselves illegal or contrary to public policy, or if the legislature has clearly demonstrated its intent to prohibit maintenance of a cause of action, then recovery should be denied.'" *Green Cross,* 242 Ariz. at 296, ¶ 10 (quoting *E & S Insulation Co. of Ariz. v. E.L. Jones Const. Co.*, 121 Ariz. 468, 470 (App. 1979)).

**¶12**        Generally, an agreement is unenforceable for public policy reasons if the legislature has determined that such agreements are "illegal,"[1] e.g., prohibited. *See 1800 Ocotillo, LLC v. WLB Grp., Inc.*, 219 Ariz. 200, 202, ¶ 7 (2008) ("Contract provisions are unenforceable if they violate legislation or other identifiable public policy."); *White v. Mattox,* 127 Ariz. 181, 184 (1980) ("Recovery will be denied if the acts to be performed under the contract are themselves illegal or contrary to public policy."); *Landi v. Arkules,* 172 Ariz. 126, 133, (App. 1992) ("An agreement is unenforceable if the acts to be performed would be illegal or violate public policy."); *Mountain States Bolt, Nut & Screw Co. v. Best–Way Transp.,* 116 Ariz. 123, 124 (App. 1977) ("[I]f the acts to be performed under the contract are themselves illegal or contrary to public policy, or if the legislature has clearly demonstrated its intent to prohibit maintenance of a cause of action, then recovery should be denied."); *see also* Restatement (Second) of Contracts § 178 cmt. a ("Occasionally, on grounds of public policy, legislation provides that specified kinds of promises or other terms are unenforceable . . . . Assuming that [such legislation is valid], the court is bound to carry out the legislative mandate with respect to the enforceability of the term.").

**¶13**        "[A]bsent legislation specifying that a contractual term is unenforceable, courts should rely on public policy to displace the private ordering of relationships only when the term is contrary to an otherwise identifiable public policy that clearly outweighs any interests in the term's enforcement." *1800 Ocotillo,* 219 Ariz. at 202, ¶ 8; *accord* Restatement § 179 cmt. b ("The declaration of public policy has now become largely the

---

[1]        The terms "contrary to public policy" and "illegal" often are used interchangeably in published opinions. There is, however, a distinction between the two. The term "illegal" should be limited to contracts the very making of which is prohibited—contracts for murder, for example. Conversely, "contrary to public policy" is used to refer to contracts that are not *per se* contrary to public policy, but the execution of which may be— such as an imperfect fee-splitting agreement. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 188 F. Supp. 2d 115, 124, n.6 (D. Mass. 2002).

province of legislators rather than judges. This is in part because legislators are supported by facilities for factual investigations and can be more responsive to the general public."). "In determining whether a provision is unenforceable, courts balance the interest in enforcing the provision against the public policy interest that opposes enforcement." *1800 Ocotillo*, 219 Ariz. at 202, ¶ 7; *accord Cohen v. Lovitt & Touche, Inc.*, 233 Ariz. 45, 49, ¶¶ 12–13 (App. 2013) (balancing the interest in enforcing a provision against the asserted public policy); Restatement § 178 (setting forth factors to be balanced). Generally, a party has no claim in restitution for performance that he has rendered under or in return for an unenforceable promise on the grounds of public policy unless denial of restitution would cause disproportionate forfeiture. Restatement § 197.

¶14        The parties do not dispute that there was a lease governing their relationship. Dakota did not defend the breach-of-contract action by claiming that it paid the monies SOCAA claimed were due and owing under the lease. Instead, Dakota claimed that the CAF was illegal, thereby rendering the lease term imposing it unenforceable. As a result, Dakota further claimed that restitution was required.

## B.    The CAF Is Prohibited by AHTA.

¶15        AHTA is part of the Federal Aviation Act, 49 U.S.C. § 40101 *et seq.* AHTA provides that:

> (b) [A] State, a political subdivision of a State, and any person that has purchased or leased an airport under section 47134 of this title *may not levy or collect a tax, fee, head charge, or other charge on…*
>
>> (1) an individual traveling in air commerce;
>>
>> (2) the transportation of an individual traveling in air commerce;
>>
>> (3) the sale of air transportation; or
>>
>> (4) *the gross receipts from that air commerce or transportation.*
>>                    *        *        *
>
> (e) "[A] state or political subdivision of a State may levy or collect . . .

> (1) taxes (except those taxes enumerated in subsection (b) of this section), including property taxes, net income taxes, franchise taxes, and sales or use taxes on the sale of goods or services; and
>
> (2) reasonable rental charges, landing fees, and other service charges from aircraft operators for using airport facilities of an airport owned or operated by that State or subdivision.

49 U.S.C. § 40116(b)(4), (e)(2) (emphasis added).

¶16        Section 40116(e)(2) modifies U.S.C. § 40116(b)(4) and permits an entity leasing airport property to collect a fee on a tenant's gross receipts if the charge represents a reasonable rental charge. *Nw. Airlines, Inc. v. Cty. of Kent, Mich.*, 510 U.S. 355, 365–66 (1994). In *Northwest Airlines*, the Supreme Court explained that U.S.C. § 40116(e)(2) does not stand alone:

> That subsection's prohibition is immediately modified by [§ 40116(e)(2)]'s permission. [Sections 40116(b)(4) and (e)(2)] together instruct that airport user fees are permissible only if, and to the extent that, they fall within [§ 40116(e)(2)]'s saving clause, which removes from [§ 40116(b)(4)]'s ban "reasonable rental charges, landing fees, and other service charges from aircraft operators for the use of airport facilities."

*Id.*

¶17        The parties agree that SOCAA is a political subdivision under AHTA and that AHTA applies to SOCAA's operation of the Sedona-Oak Creek Airport. The CAF is defined as 2.5% of Dakota's gross receipts and is prohibited by § 40116(e)(2) if it is not subject to an exception. SOCAA reiterates the argument made for the first time in its motion for a new trial and claims that the CAF is part of a flexible rental structure adopted to account for slow volume seasons within the lease year. Therefore, SOCAA argues, it falls within the statutory "reasonable rent" exception of U.S.C. § 40116(e)(2). Dakota contends that the CAF in the lease was not a reasonable rental charge under AHTA.

¶18        Dakota submitted a short separate statement of nine facts to support its motion for summary judgment. Those facts described the parties, their roles, and their lease history. The essential statements are items 7 and 8, which read:

7. Under the Lease, Dakota pays a fixed rent amount of $2,390.00/month.

8. The Lease also requires Dakota to pay an "additional fee" of 2.5% of Dakota's monthly gross receipts ("Commercial Activity Fee").

¶19 In the proceedings below, SOCAA adopted these facts as its own for its motion for summary judgment and argued that the CAF was an "airport use fee" and was therefore exempt from U.S.C. § 40116(b)(4)'s prohibition because it was a "service charge[] from aircraft operators for using airport facilities." On appeal, SOCAA argues that its prior counsel's adoption of Dakota's facts was unauthorized and done without its knowledge.

¶20 The superior court stated, in considering whether SOCAA's counsel had the authority to stipulate to Dakota's separate statement of facts, that SOCAA was bound by the decisions made within the scope of its lawyer's day-to-day tactical authority. "Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial." *Taylor v. Illinois*, 484 U.S. 400, 417–18 (1988); *see also New York v. Hill*, 528 U.S. 110, 115 (2000) (client bound by counsel's decision regarding what arguments to pursue). We agree with the superior court that SOCAA's counsel's strategic decision to argue the CAF was an airport-use fee rather than a part of Dakota's monthly rent did not waive a fundamental right that only SOCAA's Board could relinquish.

¶21 Because SOCAA's CAF is rent argument was first made in its motion for a new trial after the superior court ruled in favor of Dakota on the cross-motions for summary judgment, it is waived. *Zuluaga ex rel. Zuluaga v. Bashas', Inc.*, 242 Ariz. 205, 211, n.6 (App. 2017). ("[W]e generally will not consider an argument raised for the first time in a motion for a new trial."); *Bobrow v. Bobrow*, 241 Ariz. 592, 598, ¶ 29 (App. 2017) (Wife precluded from raising a new claim in her new trial motion.); *Helena Chem. Co. v. Coury Bros. Ranches, Inc.*, 126 Ariz. 448, 451 (App. 1980) (parties may not sit by and allow error to be committed without asking the trial court to correct the error at the time, and upon receiving an unfavorable judgment, ask for a new trial on that ground); *see also S. Ariz. Freight Lines, Ltd. v. Jackson*, 48 Ariz. 509, 518 (1936)

## C. The Superior Court Did Not Err by Refusing to Enforce the CAF Lease Provision.

¶22        Having determined that the CAF violated federal law, we turn to whether an Arizona court can nonetheless enforce it if it was a bargained-for term of a contract. Although Arizona law permits enforcement of a contract term that violates public policy under certain circumstances, *e.g.*, *Princess Plaza Partners v. State*, 187 Ariz. 214, 222-23 (App. 1995), we cannot enforce a contract term that is directly prohibited by federal law because enforcement would violate the preemption doctrine of the Supremacy Clause. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (state action is preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"); *see also Aloha Airlines, Inc. v. Dir. of Tax'n of Haw.*, 464 U.S. 7, 12 (1983) ("When a federal statute unambiguously forbids the States to impose a particular kind of tax on an industry affecting interstate commerce, courts need not look beyond the plain language of the federal statute to determine whether a state statute that imposes such a tax is preempted.").

¶23        In addition, the public policy of AHTA also supports our decision not to enforce a contract term that directly violates the statute. "Congress intended AHTA to ensure that local 'head' taxes 'will not be permitted to inhibit the flow of interstate commerce.' *Nw. Airlines, Inc. v. Cty. of Kent, Mich.*, 510 U.S. 355, 363 (1994) (quoting S.Rep. No. 93-12, p. 4 (1973)). Public policy weighs against enforcing the CAF as it is directly prohibited by U.S.C. § 40116, and enforcement would interfere with Congress's intent to prevent double taxation on air travelers. Restatement (Second) of Contracts § 178 (In weighing a public policy against enforcement, the factors to consider include "the likelihood that a refusal to enforce the term will further that policy.")

¶24        The superior court did not err by entering summary judgment in favor of Dakota on SOCAA's breach of contract claim given that the CAF as presented is forbidden under the federal statute.

## D. Dakota Did Not Establish that SOCAA Had Been Unjustly Enriched.

¶25        To support its claim for unjust enrichment, Dakota alleged only that SOCAA's collection of the CAF was illegal and contrary to public policy. Likewise, the superior court considered only whether the CAF violated U.S.C. § 40116 in determining whether SOCAA was liable for unjust enrichment. An unjust enrichment claim requires proof of "(1) an

enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Perdue v. La Rue,* 250 Ariz. 34, 42, ¶ 31 (App. 2020). However, "[t]here is no unjust enrichment if the claimant receives the counter performance specified by the parties' unenforceable agreement." Restatement (Third) of Restitution and Unjust Enrichment § 32(2) (2011); Restatement (Second) of Contracts § 197.

¶26 Even when a contract term is prohibited by statute, a plaintiff has not been impoverished by her performance if the plaintiff has received the benefit of her bargain. *Van Zanen v. Qwest Wireless, L.L.C.*, 522 F.3d 1127, 1131 (10th Cir. 2008) (describing the majority view that "where the defendant's obligation has already been performed, it is the allowance of the claim in restitution (rather than its refusal) that will result in forfeiture, penalizing the defendant rather than the claimant." (quoting Restatement (Third) Restitution § 32 cmt. f (Tentative Draft No. 3, 2004))). To succeed on a claim of unjust enrichment, Dakota would have to establish that it did not benefit from its bargain with SOCAA. Neither Dakota's counterclaim nor its separate statement of facts asserted facts to show that Dakota did not receive the benefit of its bargain with SOCAA—it leased and occupied the premises for over a decade under the terms of multiple lease agreements.

¶27 In substance, Dakota's filings alleged that (1) the lease between Dakota and SOCAA allowed Dakota to occupy space and operate its helicopter and fixed-wing tour business out of the Sedona-Oak Creek Airport, (2) under the lease, Dakota paid $2,390 per month in fixed rent, and 2.5% of its gross receipts as a commercial activity fee, and (3) the commercial activity fee violated AHTA. Dakota did not assert that the CAF payments to SOCAA were made for any reason other than bargained-for consideration in exchange for the benefits it received under the lease. Dakota, therefore, failed to state a claim for unjust enrichment. As a result, there was no genuine dispute of material fact, and SOCAA was entitled to judgment as a matter of law. *Gorney v. Meaney*, 214 Ariz. 226, 232, ¶¶ 17–20 (App. 2007) (summary judgment appropriate when a plaintiff fails to establish a prima facie case).

¶28 The superior court erred by failing to enter summary judgment in favor of SOCAA on Dakota's unjust enrichment claim. We remand the case with instructions to enter summary judgment for SOCAA

on Dakota's claim.[2] We also vacate the superior court's judgment awarding attorney's fees and costs to Dakota. On remand, the court may reconsider the award of fees, if any, to either party consistent with this decision.

## ATTORNEY'S FEES AND COSTS ON APPEAL

**¶29** Both parties request an award of attorney's fees. When a party requests attorney's fees on appeal, it "must state the statutory or contractual basis for the award." *Roubous v. Miller*, 214 Ariz. 416, 420 ¶ 21 (2007). We decline to award fees to SOCAA because it failed to state the statutory or contractual basis for its request.

**¶30** Dakota cites A.R.S. § 12-341.01 and the lease term as the basis for its request. An award of attorney's fees under A.R.S. § 12-341.01 is discretionary. *Munger Chadwick, P.L.C. v. Farwest Dev. & Const. of the Sw.*, LLC, 235 Ariz. 125, 128, ¶ 14 (App. 2014). An award to the prevailing party is mandatory under the lease, which provides:

> If any action or proceeding is brought by either party to enforce the provisions hereof, the prevailing party shall be entitled to recover all reasonable costs and attorney fees incurred in such action or proceeding, including those on appeal, in such amounts as the court may determine without a jury.

**¶31** We cannot deny a fee award required by the terms of the parties' contract, but we have the discretion to determine the prevailing party. *Berry v. 352 E. Virginia, L.L.C.*, 228 Ariz. 9, 13, ¶ 21 (App. 2011) (court asked to award fees has sole discretion to determine prevailing party). Dakota is in a worse position following the appeal. This decision affirms one judgment in its favor but vacates the other. At our discretion, we find that Dakota is not the prevailing party and, therefore, deny its request for appellate attorney's fees or costs.

**¶32** As the prevailing party, SOCAA is entitled to its costs on appeal.

---

[2] Because we vacate the superior court's judgment on Dakota's unjust enrichment claim, we need not address SOCAA's argument that the superior court erred by finding it had waived its right to assert estoppel as an affirmative defense or Dakota's argument that the superior court improperly limited its recovery based on a three-year statute of limitation.

## CONCLUSION

**¶33**      For the above-stated reasons, we affirm the court's summary judgment for Dakota on SOCAA's breach-of-contract claim and reverse and remand the court's summary judgment on Dakota's unjust enrichment claim with instructions to enter judgment in SOCAA's favor.



AMY M. WOOD • Clerk of the Court
FILED:    AA